**ROSSVILLE SALVAGE CORPORATION, Appellant,**

v.

**S. E. GRAHAM COMPANY.**

No. 14107.

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1963.

Decided June 20, 1963.

Farrell M. Kane, Staten Island, N. Y. (Ferdinand A. Sieghardt, Staten Island, N. Y., Markovitz & Stern, Resident Counsel, Philadelphia, Pa., on the brief), for appellant.

Abraham E. Freedman, Philadelphia, Pa. (Morton Rosen, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN and GANEY, Circuit Judges, and COHEN, District Judge.

GANEY, Circuit Judge.

Rossville Salvage Corporation brought an action in the United States District Court for the Eastern District of Pennsylvania against S. E. Graham Company for breach of a sales contract. Diversity of citizenship of the parties and the requisite amount in controversy are the basis of the district court's jurisdiction. See 28 U.S.C.A. § 1332. The jury found in

favor of defendant. Plaintiff has appealed from the court's denial of its motion for a new trial.

On August 7, 1958, defendant's tanker *S. E. Graham* caught fire after a collision. Defendant, deeming it economically unfeasible to repair and restore her to service, decided to put the vessel up for sale. The vessel was anchored in Narragansett Bay, near Newport, Rhode Island. Since the vessel might still contain gasoline vapor, defendant considered her a hazard to navigation. It hired a workboat with a small crew at $15 per hour to give an around-the-clock warning to other vessels to keep clear of the disabled tanker. It elected to invite bids for the purchase of the vessel. As advertised in newspapers, the invitation was as follows:

Tender invited purchase M. V. "S. E. GRAHAM" #244168 afloat at Buoy #6 Newport, R. I. for inspection at bidder's risk Monday, August 25th, 1958 between Zero 900–1700. Recently damaged. Gasoline cargo discharged; not gas free—sale as is/where is. Address bids:

> S. E. Graham Co.
> c/o A. Holm-Anderson
> Room 405
> 74 Trinity Place
> New York 6 N Y

with certified check for 10% of bid. Owners reserve rejection of bids. Bids open noon August 27, 1958 with notification of award within 24 hours. Within 24 hours of notification successful bidder required to forward certified check for the balance of payment and take title and possession of vessel.[1]

One John J. Witte, president of plaintiff, read the advertisement and went to Newport to inspect the tanker. He saw the condition of the vessel and was aware that a small craft was stationed nearby keeping watch over the vessel. The plaintiff submitted a bid, as did three others, for the purchase of the tanker.

The submitted bids were opened in New York City on August 27, 1958. Plaintiff's bid of $19,500, accompanied by a check for $2,000, was the highest. On the same day, defendant's attorney, Benjamin F. Stahl, Jr., telephoned Witte to inform him that his company was the successful bidder and that settlement would take place at 1:00 p. m. in Camden, New Jersey, on August 28, in accordance with the terms of the invitation for bids. He reiterated the necessity of plaintiff's taking possession as well as title to the vessel at the time of settlement. A confirming telegram and letter were sent to plaintiff at its Staten Island office address. The telegram states:

We confirm sale of S. E. Graham to you for the sum of $19,500 Settlement to be held Thursday, August 28th 1 PM at * * * 518 Market Street Camden New Jersey.

The letter, in addition to repeating the information in the telegram, provides:

At settlement we will deliver Bill of Sale, together with Certificate of Ownership, showing the vessel clear of all liens. At the time of settlement you will be expected to take possession to, as well as title of, the vessel.

After he received the telephone call from Stahl, Witte informed a towing firm that plaintiff had been the successful bidder and that he would notify the firm immediately after plaintiff obtained title to tow the vessel down to plaintiff's yard on Long Island, N. Y.

On August 28, the people of New England were alerted to the probability that Hurricane Daisy, which was leaving wide destruction in its path, would pass over that area. On the morning of that day Stahl again telephoned Witte and reminded him that plaintiff would be required to take possession of the vessel. When Witte arrived in Camden and before he went to the place of settlement, he again called a representative of the towing firm and learned from him that a definite decision could not be given un-

---

1. The advertisement appeared in the Philadelphia Inquirer, The New York Times and The Traveler (Boston).

til after the threat of the hurricane disappeared.

At the trial, Stahl gave the following version as to what transpired at the settlement meeting: After Witte placed a certified check for $17,000 on the desk, Stahl tendered to Witte an executed Bill of Sale of Enrolled Vessel, a certificate of ownership of the vessel, and a letter referred to by defendant as a "memorandum of closing" for Witte's inspection. The memorandum in the form of a letter addressed to plaintiff states:

As of P.M., August 28, 1958, at Camden, New Jersey, we have transferred title to the M/V S. E. GRAHAM, evidenced by delivery to you of executed bill of sale, and have at the same time delivered to you possession of the vessel, now moored in Narragansett Bay, Rhode Island.

We would appreciate your confirmation of the foregoing on the enclosed copy of this letter.

Very truly yours,
S. E. GRAHAM Co.
By: WARREN L. GRAHAM
President

We acknowledge transfer of title and delivery of possession as above set forth.

ROSSVILLE SALVAGE CORPORATION
By: ..................

After Witte inspected the papers, Stahl said to him, "If you are satisfied and will sign the memorandum of closing, we will be finished." In other words all that he required Witte to do, as far as possession was concerned, was to sign the memorandum. Witte refused to sign the acknowledgment for he was unwilling to take possession because of the hurricane threat. When Witte persisted in refusing to sign the acknowledgment, Stahl asked him to step outside the office while he made some telephone calls. Stahl then called A. M. Randolph Charrington, Jr., vice president in charge of sales of the North American Smelting Company, one of the unsuccessful bidders of the vessel, to find out if that company was still interested in buying the vessel. Charrington replied that he did not know but would try to find out. After this telephone conversation, Stahl told Witte that he had been unable to sell the vessel to another but that he would keep on trying.

After they returned from lunch at 2:15 p. m., Stahl called his client and then called Charrington again and learned that a subsidiary of the smelting company was willing to buy the vessel for $19,500 and take title and possession according to the conditions in the invitation for bids. He then called Witte into the office and told him that he had arranged to sell the vessel to another company. Witte then asked for the return of the $2,000 deposit check. Before Stahl returned the deposit check he prepared a mutual release for Witte to sign. When Witte read the release he told Stahl that he was then willing to take title and possession of the vessel, and if someone else were willing to take the risk he was too. Stahl then told Witte, after he had telephoned his client, that his instructions were that he was to go ahead with the agreement to sell the vessel to the smelting company. He therefore offered to return the $2,000 check. Witte refused to accept it.

Later that day Stahl completed the sale of the vessel to the smelting company for a price of $19,500. He transferred to that company an executed bill of sale and a certificate of ownership of the vessel. The buyer in turn signed the acknowledgment and agreed to take over the responsibility for paying for the workboat attending the vessel. The vessel was not moved from Newport until four days later.

Witte testified that he refused to sign the acknowledgment because he had conveyed to Stahl his willingness to put a man aboard the vessel and that he was not asked merely to sign the acknowledgment but he was required to agree that plaintiff would tow the vessel away so as to signify a change in ownership. He also presented the argument, as he does here, that he was not required to sign because possession automatically followed title.

The jury was left to decide whose version, Witte's or Stahl's, to believe, and then whether the version they accepted showed that plaintiff was ready and openly willing to take possession of the vessel within the appointed time. The district court refused to charge, at plaintiff's request, that had defendant delivered the bill of sale to plaintiff, possession of the vessel would thereby pass to it because possession automatically follows title. It did, however, tell the jury that although there are a variety of ways and means in which a party could take possession of a vessel, they should consider only the alternatives which the parties mentioned regarding the taking of possession, namely, plaintiff's placing of a man aboard the vessel, or its signing of the acknowledgment. It also told them that plaintiff was not required to tow the vessel away or to sign the acknowledgment, but nevertheless they could consider Witte's refusal to sign the acknowledgment as an indication of its unwillingness to take possession. These instructions and the failure to instruct are assigned as errors on the part of the trial judge.

 The interpretation of a written document is for the courts. The last paragraph of the invitation for bids states: "Within 24 hours of notification, successful bidder required to furnish certified check for balance payment *and take title and possession of vessel.*" (Italics ours). "Title," as there used, means ownership (property in the vessel) or evidence of that ownership. In an agreement to sell goods, title to the goods passes when the parties to the agreement intend it to pass.[2] The sale of goods may take place even though possession of them is to be surrendered or taken at a later date. Thus, the Sales Act recognizes a distinction between title (ownership or property) and possession.[3] Despite the language used in the confirming telegram and letter, it is quite apparent to us that title was not to pass until after the successful bidder had at least furnished a certified check for the balance payment within the appointed time.[4] The generally accepted meaning of the expression "to take possession of goods" is to exercise actual physical dominion, custody or control over the goods. We think that is the meaning used in the invitation for bids. It could be accomplished by a towing of the vessel, by the placing of men aboard or possibly by the furnishing of a small craft to patrol the immediate area around the vessel. It is also apparent that possession was to be taken at the time title was transferred. If the mere taking of title was to accomplish the act of taking possession there would have been no necessity to mention the subject of possession. An interpretation which gives effect and meaning to a term is to be preferred over one which makes such term mere surplusage or without effect. Therefore, we must conclude that the taking of possession and title were meant to

2. See § 19(1) of the Uniform Sales Act. At the pertinent times in question, this Act was in effect in New York and New Jersey. New York Personal Property Law, (McKinney's Consolidated Law of New York, c. 41) and New Jersey Statutes Annotated, 46:30–1 et seq.

3. Section 43(1) of the Sales Act provides: "Whether it is for the buyer to take possession of the goods or for the seller to send them to the buyer is a question depending in each case on the contract, express or implied, between the parties * * * in the case of a contract to sell or a sale of specific goods, which to the knowledge of the parties when the contract or the sale was made were in some other place, then that place is the place of delivery."

4. "Of course, if the bid is effectively accepted before it is revoked * * * the bidder is bound by contract. In these cases, however it is seldom that a notice by the offeree that the bid is the [highest], or even that it is accepted, will close the contract. Generally, it is understood that they shall not be bound by contract prior to the execution of a formal written instrument. If the attempted acceptance of the bid by the offeree is defective because it is conditional, or otherwise different from the terms of the bid, no contract has been consummated, the bidder is free to withdraw and has a right to the return of his deposit." Corbin on Contracts, § 47.

be separate items even though they were meant to take place concurrently.

It was not mandatory upon the defendant to insist upon plaintiff's taking actual possession before completing the sale of the vessel. Defendant could have agreed to accept something less. But the district court told the jury that Witte was not required to sign the acknowledgment and also that plaintiff was not required to tow the vessel away. Under the circumstances, we think Witte was required to sign the memorandum unless Stahl insisted that such a signing bound the plaintiff to tow the vessel away immediately. Witte testified that he told Stahl that his company, instead of signing the acknowledgment, would send its men to Newport and board the vessel *after* it got title. Witte did not relate how soon or how long after plaintiff got title its men would board the vessel. Even if we were to assume that such a promise was made, this was not what the defendant bargained for in the invitation for bids. Although the taking of title and possession were separate items, as mentioned previously, there is nothing in the invitation for bids to indicate that they were not to take place other than concurrently. It therefore was not required to sell the vessel on such a promise. Consequently, the plaintiff was not harmed by the district court's instruction to the jury that they could take into consideration Witte's refusal to sign the acknowledgment in determining whether plaintiff was willing or unwilling to take possession of the vessel. That instruction was more favorable to plaintiff than that to which it was entitled. Hence, we must accept the verdict as establishing that Stahl did not insist that plaintiff tow the vessel away.

▄▄▄▄ Plaintiff also complains that the trial court, over its objection, erroneously permitted the introduction of telephone conversations between Stahl and Charrington concerning the sale of the vessel to that company. These conversations took place on August 28 when Witte was at the Camden meeting place. It claims that this testimony was hearsay because it recounted conversations not made in Witte's presence. The claimed prejudice resulting from the reception of this testimony is that it corroborated Stahl's testimony that he had difficulty in settling with Witte and that the North American Smelting Company was ready to do that which the plaintiff allegedly would not do, that is, to take possession of the vessel by executing the acknowledgment.

Assuming that it violated the hearsay rule,[5] we fail to see how plaintiff was harmed by this testimony. In its complaint plaintiff avers that defendant "has sold said vessel to another party and has delivered the title and possession of said vessel to such other party." Aside from the testimony of the telephone conversations, there was competent proof of the sale of the vessel to the smelting company. Stahl testified that the vessel was sold on August 28 under the same conditions that were offered to plaintiff. The executed bill of sale made out to the smelting company and the signed acknowledgment of acceptance of title and delivery of possession of the vessel by the president of the smelting company were put in evidence without objection by plaintiff. Thus, the testimony of the conversations was merely cumulative evidence of facts shown by proper means and therefore harmless. See Fed.Rule of Civ.Proc. 61; Gordon v. Robinson, 210 F.2d 192, 199 (C.A. 3, 1954).

The order of the district court will be affirmed.

---

5. Two of the basic reasons for excluding hearsay evidence are that it violates the rules that all testimony must be given under oath and that the opposing party is to be given an opportunity to cross-examine the person making the statement. Here both parties to the telephone conversations were sworn as witnesses, and subject to cross-examination by plaintiff's counsel.