Arthur Dennis DUNBAR, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19007.

United States Court of Appeals
Ninth Circuit.

March 8, 1965.

**980**

Richard B. Weinstein, San Francisco, Cal., for the appellant.

Sidney I. Lezak, U. S. Atty., Donal D. Sullivan, Asst. U. S. Atty., Portland, Cal., for appellee.

Before ORR, HAMLEY and KOELSCH, Circuit Judges.

ORR, Circuit Judge.

Appellant Dunbar was indicted on four counts, charging violations of the federal narcotics laws. The first count charged violation of 26 U.S.C. § 4705(a) —sale of narcotics not pursuant to a written order. The second charged violation of 26 U.S.C. § 4704(a)—purchase of narcotics not in the original stamped package. The third count also charged violation of 26 U.S.C. § 4704(a)—sale of narcotics not in the original stamped package. The fourth count charged violation of 21 U.S.C. § 174—receiving, concealing, and facilitating the transportation of unlawfully imported narcotics. The second count was dismissed. Appellant was convicted on three counts and sentenced to ten years on each, the sentences to run concurrently.

The government's evidence disclosed the following. Having reason to believe that appellant was a narcotics peddler, agents of the Federal Bureau of Narcot-

ics, in conjunction with the Portland, Oregon, Police Department, rented two adjoining rooms in the New Ritz Hotel, situated in downtown Portland. Two holes were drilled in the door connecting the two rooms and were covered by a one-way mirror so that the government agents could see from one room to the other without being detected. An informant or "special employee" of the government, Harold Stillwell, then proceeded to another hotel and approached appellant and asked if he had "anything", meaning narcotics. Appellant told Stillwell—who was known to people dealing in narcotics—that he could secure some heroin if Stillwell had money. Arrangements were made for Stillwell to call appellant shortly thereafter. Stillwell went to the New Ritz Hotel and informed federal agent Robinson and Portland Officers Hill and Bisenius as to what had transpired. They searched Stillwell's person and then monitored a call to appellant in which appellant agreed to get four capsules of heroin for Stillwell for $40. Stillwell offered to pay the cab fare of appellant. Fifteen minutes later appellant knocked on Stillwell's door at the New Ritz and under the surveillance of the agents picked up $43 from Stillwell, which had been furnished by the government agents. About one hour later appellant returned and placed 4 capsules of heroin on the table in Stillwell's room. Following a discussion relating to the quality of the drugs, Stillwell and appellant Dunbar each took an injection from one of the capsules. At this time a phone in the hallway rang and Stillwell went out to answer it. Dunbar followed him out of the room and left the hotel. Stillwell then let the government agents— who had been observing Stillwell's room through the one-way mirror—into his room. The agents took possession of the heroin. Later the same day a similar transaction was planned. This time, however, appellant took $50 but did not return.

Stillwell and the three government agents testified to the above series of events. Further, a chemist called by the

government testified that the contents of the capsules were heroin.

Appellant testified in his own behalf to the following. Stillwell called appellant and asked appellant to do him a favor, which he would explain if appellant would come to his room. When appellant came to the hotel he encountered Stillwell in the hall and walked with him to the doorway of his room, at which time Stillwell asked appellant to pick up some heroin that was buried in the park. Stillwell gave him $50 to leave in the container from which he got the heroin. He did this and returned with the heroin to the New Ritz, where he gave Stillwell the narcotics, and at which time each took an injection of part of one capsule. Appellant testified further that Stillwell had promised him a whole capsule for his trouble, and that upon returning with the heroin he and Stillwell conversed about this. Appellant also testified that on a second, later, occasion Stillwell gave him $43 to hold for him, which he subsequently returned.

In addition, appellant testified as to several occasions when Stillwell either sold, offered to sell, or gave narcotics to him. A witness was called by appellant who testified that Stillwell had on one occasion attempted to sell narcotics to Dunbar and that Stillwell was known to him as a user and seller of various prescription drugs.

The credibility of the government's witnesses and of Dunbar was thus put in issue with the result that the jury, by their verdict of guilty on all three counts, placed no credence in appellant's story.

■ Five contentions are presented. First, appellant contends that the trial court erred by causing an undue sense of haste in the minds of the jurors. This contention is bottomed on the following statement made by the trial court at the time counsel for the defendant requested a five minute recess:

"The difficulty is, Mr. Sweek, that we started late. We have got to finish this case because I am due in Salem early tomorrow morning. I don't know how long this case is going to take, but if you want five minutes I will give it to you. Do you want five minutes? If you want to take it now, we cannot take a recess a little later."

The court then granted the request for a recess, stating:

"Very well. Ladies and gentlemen, we are going to take a five minute recess. Then we will go through until we finish. Five minute recess."

An examination of the record as a whole discloses that there is no merit to this contention. The weight of the testimony against appellant is such that the jury would have little difficulty arriving at a guilty verdict, once they credited the testimony of the government's witnesses, which they evidently did.

■ Appellant contends that the trial court erred in refusing to sustain objection to testimony by Officer Hill, who testified that he spoke with appellant while appellant was in the company of a narcotics user and "shoplifter." It is argued that this testimony was introduced in an attempt to convict by association. We are not so impressed. The cross-examination of Hill disclosed that he had picked up defendant previously for questioning. Appellant's counsel was seeking to show that Hill at that time asked Dunbar to act as an informer or "special employee." To rebut this the government recalled Hill and brought out that the appellant was in the company of a known narcotics user and shoplifter when Hill spoke with him. This was proper rebuttal.

■ Error is charged in the refusal of the trial court to grant a motion of acquittal on the grounds that appellant was entrapped as a matter of law. This contention is based upon the propositions that there was clear and uncontroverted evidence that the government had re-introduced appellant to the use of drugs and that the government presented no evidence of his predisposition to commit

the crimes of which he was accused. We cannot accept the assertion that there was no contradiction of evidence indicating that the government had re-introduced appellant to the use of drugs.[1] We likewise cannot accept appellant's contention that there is in the record no showing of predisposition on the part of the appellant. On the contrary, there is in the record some evidence of appellant's predisposition to deal in narcotics. Other such evidence was kept out pursuant to appellant's objection. Indeed, appellant's counsel was told in an exchange concerning the entrapment instructions:

> "I kept all that testimony of his predisposition out at your request, and I did that because I knew he would be hooked if all that evidence came out."

Appellant's contention that the trial court should have found entrapment as a matter of law is without merit.

Appellant's attack upon the instruction given on entrapment is likewise without merit. Said entrapment instruction adequately and properly presented the question of entrapment to the jury.

As a matter of fact, an instruction as to the defense of entrapment need not have been given with regard to counts I and III—involving "sales". Appellant denied that he made a sale. He testified that he merely "fetched" the heroin as an errand boy. He is precluded from urging this defense and at the same time raising the defense that he was entrapped into the making of a sale. See Eastman v. United States, 212 F.2d 320, 322 (9th Cir. 1954).

The defense of entrapment is, of course, available to the charge of transporting the heroin—count IV. While we find no error in the entrapment instruction, if it were erroneous, it would not be prejudicial, in that the jury found there was a sale for purposes of counts I and III. The sentences on each count were the same and run concurrently. It is well settled that where there are several counts upon which the sentence is the same and concurrent, and there is a valid conviction on one, the judgment will not be disturbed.

Appellant further contends that the trial court erred in failing to instruct the jury regarding the difference between dealing with a purchaser as a seller and acting for the purchaser as a procuring agent. Under the facts of this case no such instruction was required. The instructions as a whole covered the law of the case adequately.

Affirmed.

1. Appellant's assertion is based upon testimony that Stillwell had sold appellant narcotics during the last week of 1962. Stillwell's testimony directly contradicts this. He testified that he first met appellant in January, 1963, and that he had never sold any narcotics to appellant.