Jose Doroteo GARIBAY–GARCIA,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20408.

United States Court of Appeals
Ninth Circuit.

May 23, 1966.

Carl L. Fabbroni, O'Connor, Milford, Porter & Fabbroni, San Diego, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and TAYLOR, District Judge.

BARNES, Circuit Judge:

Appellant appeals from a judgment of conviction on two counts based on the smuggling of 530 pounds of marijuana across the Mexican-American border at the gate in the Woodbine Check of the All-American Irrigation Canal, one hundred yards north and west of the International Border and seven miles west of Calexico, California.

But two issues are raised on this appeal: (1) the refusal of the trial judge to order the government to name its informant; and (2) the refusal of the court to instruct on the issue of entrapment.

Appellant's present defense was that while he did in fact physically deliver some of the 530 pounds of marijuana across the border, he did not know it was the United States border, thinking it was merely a border of a state of Mexico.[1]

---

1. We need not meet the issue as to whether it is or is not illegal, under Mexican law, to transport marijuana from one Mexican state into another. No proof of Mexican law was offered or received; nor referred to in briefs.

■ Thus at the trial, he did not admit the crime, but insisted he had not committed it (contrary to his earlier confession to customs agent Landa). Having denied the possession of the marijuana, and that he negotiated for its sale and delivered the written note specifying the $7,290 price (all as testified to by government witnesses), he was in no position to ask for an instruction on entrapment. "[A]bsent the commission of a crime, there can be no entrapment." Ramirez v. United States, 294 F.2d 277, 283 (9th Cir. 1961); Ortega v. United States, 348 F.2d 874, 876 (9th Cir. 1965). As in Dunbar v. United States, 342 F.2d 979 (9th Cir. 1965) (where Dunbar claimed he acted as a mere office boy in delivering the narcotics, but denied a sale), the defendant "is precluded from urging this defense and at the same time raising the defense that he was entrapped into the making of a sale." 342 F.2d at p. 982.

■ Further, no instructions on entrapment were requested or given, and the appellant made no objections to the court's instructions to the jury. (Tr. 361, l. 11, 12.) We find no error.

■ As to the refusal of the court to order the naming of an informant, this is largely a matter of the court's discretion, an abuse of which depends upon the particular facts of the case. (Jones v. United States, 326 F.2d 124 (9th Cir. 1963).) The lack of abuse becomes clearly apparent by comparing the facts in the two cases appellant cites, and those of the instant case.

■ Here there were three vehicles (a Ford, a Plymouth and a Chevrolet), and five persons (or perhaps six), smuggling the contraband. Three persons were arrested: appellant, Valdez-Quiroz, and Teran-Nunez. Vincente Zamara-Lopez (coindicted as an aider and abettor) and one Juan Villareal allegedly escaped on foot, and the Ford driver drove away. The government agents testified neither Zamara-Lopez or Villareal were informants, nor persons working with the government on the case. (R.T. 272–75.)

"The driver of the Ford was not the informant, or a paid employee of the United States Government." (R.T. p. 38.) His description did not fit the description of any informant. (R.T. pp. 183; 217; 244; 269; 275.) The informant was not present at the scene of the arrest. (R.T. 278.) No participant present at the smuggling transaction was the informer. For this reason, one of the two principal factual ingredients of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957) (one of the two cases relied on by appellant in his brief) is missing. In Roviaro, the informant was one who "helped to set up the commission of the crime and who was present at its occurrence." 353 U.S. at 61, 77 S.Ct. at 628. Nor was the informant here (as in Roviaro) "the sole participant, other than the accused, in the transaction charged." 353 U.S. at 64, 77 S.Ct. at 630.

The second case cited by appellant is Gilmore v. United States, 256 F.2d 565 (5th Cir. 1958). This is again a case where the facts differ from the instant case. In Gilmore the appellant seller and the agent purchaser were the only participants in the transaction, save for "Anonymous," the government informer, who "set up" their meeting. He was, said the majority opinion in Gilmore "an active participant in setting the stage, in creating the atmosphere of confidence beforehand, and in continuing it by his close presence during the moments of critical conversation." Moreover, Anonymous' alleged conversation with the agent purchaser was "of critical importance."

Here there were six agents purchasing the smuggled marijuana, and six in the seller's party. All conversations took place between various U. S. Government agents and the named and prosecuted defendants.

As Roviaro (and Gilmore in quoting from it) recognizes:

" 'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the

flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" Gilmore v. United States, supra, at 566–567.

Various theories are now urged by appellant to explain his actions.[2] But one reference to a transcript page appears in the brief; it is to a legal theory, and not a fact. Appellant's brief violates this court's rules in many particulars.[3]

The notice of appeal correctly describes the appeal as one from the judgment of conviction; the appellant's statement erroneously describes the appeal as one from a non-appealable order.

The appellant's brief purports to "reserve the right to refer to evidentiary facts as set forth in the Reporter's Transcript," whatever that may mean. He refers to none in his brief, and he waived oral argument. Such procedures make an appellate court's task more difficult than it should be, and invite drastic action on our part; yet to protect the party litigant, we have carefully perused the whole record. We find no error, and we affirm.

---

**2.** Several suggestions are made in appellant's brief—that appellant "thought" he was smuggling across a Mexican state border, and not the International Border; that only two of the three vehicles carried marijuana (one escaped); that Villareal was never arrested or indicted; that the escape of the driver of the third car —the Ford, and/or Villareal, was "incredible" because the customs agents, though armed, did not shoot them down, or chase after them into Mexico; "that *it is possible* [emphasis added] that the informant was instrumental in leading appellant and others across the border against their will;" that *"it is probable* [emphasis added] that the informant conspired" with one who got away to entrap the appellant.

Much of this may be good jury argument, but is of little value on appeal. The American agents were under orders not to draw their weapons unless attacked. Frequently one or more, but not all, participants in a crime are captured and/or prosecuted. It is extremely difficult for this court to believe that a Mexican National, who had lived 22 years in the United States (R.T. 222, 248), who lived in Mexico in San Luis, 40 miles from Mexicali (R.T. 141), and who was the owner and operator of either a hotel or apartments, would think he was crossing the border line of the Mexican State of Baja California, into another Mexican state, rather than the International Borderline. Other than crossing the border into the territory of Baja California Sur (some 400 miles south of San Luis and Mexicali), one cannot leave Baja California to go into another Mexican state without crossing either the Gulf of California or the Colorado River, both rather obvious physical landmarks. Nor can one understand how a person could, at 5:30 in the evening of a winter day, pass two concrete and steel obelisks, at least six feet high, "directly adjacent" or "right alongside" the road over which he traversed, and not see them. (R.T. 65–79.)

**3.** (a) There is no certificate attached (Rule 18 subdivision 2(g)); (b) there is but one record reference (Rule 18 subdivision 2(c), (d), (e)); (c) there is no specification of errors (Rule 18 subdivision 2(d)); (d) there is no listing of exhibits (Rule 18 subdivision 2(f)).