Javier CARBAJAL–PORTILLO, Rafael Vega-Picos, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 21855, 21855A.

United States Court of Appeals Ninth Circuit.

June 12, 1968.

Michael S. Hegner (argued), of Hecsh, Hegner & Philbin, San Diego, Cal., for appellants.

Shelby Gott (argued), Asst. U. S. Atty., Edwin L. Miller, U. S. Atty., San Diego, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and GRAY, District Judge.

## APPEAL OF CARBAJAL-PORTILLO

GRAY, District Judge:

Appellant Javier Carbajal-Portillo (Carbajal) contends that the undisputed evidence shows that, as a matter of law, the offenses he committed stemmed directly from entrapment. We agree.

It appears, from the testimony at the trial, that Carbajal lived near the city of Mazatlan in Sinaloa, Mexico, where he had a family to support and was unemployed and destitute. A man named Osuna offered to pay him $500 if he would carry a package of heroin to Mexicali, a city in Mexico immediately adjacent to the California border, and sell it to a man named Palomares. Carbajal accepted the assignment, put the heroin in a paper bag, boarded a bus, and made the more than one thousand mile journey to Mexicali. He found Palomares, who told him

that he was unable to pay for the heroin. Instead, Palomares suggested to Carbajal that the latter go across the California border to the adjoining city of Calexico and sell the narcotics to a Mr. Ricos, who would buy it and give him the money. Carbajal left the package of heroin with Palomares, crossed into Calexico, and met Ricos at the street corner location where Palomares told him that Ricos would be waiting. There, Carbajal ascertained from Ricos that the latter was interested in buying sixteen ounces of heroin and they agreed upon a price. Carbajal thereupon expressed reluctance to bring the narcotics into the United States and asked Ricos to come back across the border in order that the sale might be made in Mexico. Ricos responded that he could not go into Mexico because he was on parole, and that if there was to be any sale at all, it would have to take place in the United States. After further conversation, Carbajal finally agreed to meet Ricos on a street corner in Calexico the next day and deliver to him the narcotics in exchange for the purchase price. He performed accordingly, was immediately arrested, and the conviction here appealed from followed.

Ricos was a narcotics agent of the State of California and his true name was Halcon. He does not dispute, but rather tends to confirm, the above summary of his conversation with Carbajal. In any event, at the argument on appeal, the Assistant United States Attorney, with commendable candor, acknowledged that Carbajal would not have brought the narcotics into the United States but for the importuning of Ricos, the narcotics agent.

Much has been written concerning the rationale of the law pertaining to entrapment, and most of the comments refer back to Sorrells v. United States, 287 U. S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), as constituting the principal enunciation of this well established doctrine. In that case Chief Justice Hughes, in writing the opinion of the Court, quoted with approval from an earlier lower court decision which reasoned that "When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." (287 U.S. at 445, 53 S. Ct. at 214.)

In the recent case of Notaro v. United States, 363 F.2d 169, 173 (9th Cir. 1966), Judge Ely noted that in *Sorrells,* "It was not thought to be right and just that a Government should instigate and successfully pursue prosecution for the commission of an act which the prosecuted would not likely have committed but for the importunity of an agent of the Government itself."

We think that the above quoted comments apply here. There can be no doubt that Carbajal was willing to sell heroin in Mexico; as noted above, this was the primary purpose of his long journey from his home to Mexicali. But the crimes of which Carbajal was accused and convicted involved importation of narcotics *into this Country* and selling it *here,* in violation of the laws of the United States. It is uncontroverted that Carbajal initially was reluctant to commit these crimes, and that he would not have done so except for the persuasion, deceitful representation and inducement by Ricos, the narcotics agent.

The Government emphasizes that the sale of narcotics in Mexico is contrary to the criminal laws of that country, although it acknowledges that there may be considerable disparity in the extent to which such laws are enforced and infringers punished there as compared with the United States. The Government contends that inasmuch as Carbajal had no reluctance to commit a narcotics crime in Mexico, the fact that he was induced to transfer his violation to the United States should not allow him the defense of entrapment. In support of this contention, the Government relies upon United States v. Becker, 62 F.2d

1007 (2d Cir. 1933) and United States v. Edwards, 366 F.2d 853 (2d Cir. 1966). In both of those cases the defendants had been engaged in selling articles of contraband locally, and they were successfully prosecuted for having made similar sales across state lines pursuant to opportunities presented to them by federal agents. However, the record shows clearly in each instance that the defendant never considered himself limited by the boundaries of his own state; that he was just as willing to commit the federal crime as he was to commit the state offense; and that he promptly and without any urging made the interstate sale as soon as the opportunity was offered.

Quite a different situation is presented here. Carbajal acknowledgedly displayed a reluctance to bring narcotics into this Country. Whether this reluctance stemmed from fear of United States law enforcement or was due to some other factor is unknown and irrelevant. So long as that reluctance endured without being overcome, Carbajal would not be engaging in the illicit narcotics traffic that our laws are designed to prevent. Here, the narcotics agent did more than give Carbajal an opportunity to perpetuate such an offense; here, the agent affirmatively persuaded Carbajal to commit the crime in order that he might arrest him. This constituted entrapment and cannot lawfully form the basis for a prosecution. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

## APPEAL OF VEGA-PICOS

MERRILL, Circuit Judge:

The case of Carbajal's co-appellant, Rafael Vega-Picos (Vega), presents a somewhat different problem. When Carbajal returned to Mexico after having promised Ricos to deliver the heroin on the following day, he had not determined just how he was going to get the narcotics across the border. That evening he went to a bar in Mexicali, and there for the first time he met Vega, who at that time was a local resident. The two men ascertained that they both came from the State of Sinaloa and that they had mutual friends there. Further conversation ensued, and one of the results was that on the following day Vega drove his automobile across the border into Calexico. When Carbajal kept his appointment with Ricos, Vega and his automobile were in the immediate vicinity, and Carbajal made the promised delivery by removing the heroin from Vega's car. Vega was arrested, charged and convicted jointly with Carbajal.

Both defendants contend that Vega knew nothing about the narcotics, and that he undertook only to assist Carbajal in entering the United States illegally and to drive him to El Centro, in return for a payment of $25. Carbajal insists that he placed the narcotics in the car without Vega's knowledge. The testimony as to Vega's actions at the time of the delivery of the heroin to Ricos is somewhat conflicting. However, the record contains ample basis upon which the jury could have found, and presumably did find, that Vega knew exactly what was in his car and what was to be done with it. In considering this appeal, we therefore assume that such was the fact, and that Vega had agreed, presumably in the bar the night before, to assist Carbajal by transporting the narcotics across the border in order that delivery might be made to Ricos.

Vega was not entrapped by the narcotics agent. He apparently agreed to help with the delivery of the heroin as an accommodation for his new-found friend, and this willingness was in no way affected by the circumstances under which Carbajal had agreed to make the sale. Thus we have the paradoxical situation in which the principal participant goes free because he was entrapped, while his lesser confederate must remain in prison and serve his sentence unless the "umbrella" of Carbajal's entrapment is stretched to cover Vega as well. Vega insists that, as a matter of fairness, it should be. We cannot agree.

■■ The defense of entrapment is not available to everyone who is induced,[1] against his prior disposition, to commit a crime. It is available only where such inducement was by, or was occasioned by, a Government agent. It is made available not because inducement negatives criminal intent and thus establishes the fact of innocence; but because Government agents should not be permitted to act in such a fashion. The defense does not so much establish innocence as grant immunity from prosecution for criminal acts concededly committed. Here Carbajal goes free because what was done to him was done by a Government agent. Vega must face the consequences of his criminal conduct because the Government agent played no part in inducing his crime.[2]

The judgment as to Carbajal is reversed. The judgment as to Vega is affirmed.

GRAY, District Judge (dissenting as to Vega):

It seems to me that the "umbrella" of Carbajal's entrapment should, indeed, be stretched to cover Vega as well. In our opinion in this case with respect to Carbajal, we refer to Judge Ely's comment in Notaro v. United States, 363 F.2d 169, 173 (9th Cir. 1966), in which he explained the rationale of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932):

"It was not thought to be right and just that a Government should instigate and successfully pursue prosecution for the commission of an act which the prosecuted would not likely have committed but for the importunity of an agent of the Government itself."

I believe that such comment is equally applicable to Vega.

As has been discussed in the opinion concerning Carbajal's appeal, the transportation and sale of heroin stemmed directly from the persuasion exerted by the narcotics agent. But for the latter's activities, Carbajal would not have agreed to make the sale in the United States and would not have been looking for someone to help him with transportation. There is no indication that Vega previously dealt with narcotics in any way or that he was " * * * awaiting any propitious opportunity to commit the offense." Cf. United States v. Sherman, 200 F.2d 880, 882 (2d Cir. 1952). Thus, it may be said of Vega, as well as of Carbajal, that he was convicted for having perpetrated a crime that he " * * * would not likely have committed but for the importunity of an agent of the Government itself." (See the above quoted passage from Notaro.)

Under the circumstances here concerned, I cannot agree with the majority that "the Government agent played no part in inducing his [Vega's] crime." I would reverse as to Vega for the same reasons of enlightened public policy, as embodied in the doctrine of entrapment, that now cause Carbajal to go free. It seems to me that the interests of justice and simple fairness are little served by releasing the one without the other.

1. We note that the record does not disclose the facts of Vega's "inducement" by Carbajal but only suggests that he may have acted out of accommodation. To give Vega the benefit of Carbajal's entrapment on this record would be to make such a defense available not only to those induced into crime by the principal actor but to professional criminals as well.

2. We may also note that Vega is faced with the rule of this circuit that one who denies that he committed the offending act may not invoke the defense of entrapment. Benson v. Carter, 319 F.2d 396 (9th Cir. 1968); Garibay-Garcia v. United States, 362 F.2d 509 (9th Cir. 1968); Ortega v. United States, 348 F.2d 874 (9th Cir. 1965); Dunbar v. United States, 342 F.2d 979 (9th Cir. 1965). We do not reach the question whether this rule would properly apply were Carbajal's entrapment otherwise available as a defense to Vega.