**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony Melvin AZADIAN, Defendant-Appellant.**

**No. 25772.**

United States Court of Appeals, Ninth Circuit.

Jan. 11, 1971.

Rehearing Denied April 1, 1971.

Ronald Morrow (argued), Richard G. Sherman, Beverly Hills, Cal., for defendant-appellant.

David P. Curnow (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., David P. Curow, Edward J. Wallin, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, ELY and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellant was convicted, under 18 U. S.C. §§ 2 and 201(c), of aiding and abetting the bribing of a public official, an employee of a draft board. On appeal, he urges that his conviction cannot stand because the principal in the case

was found not guilty by reason of entrapment. We disagree and affirm.

Three persons were prosecuted on a multi-count indictment. Diane Daniel was an employee of Local Group B in Pasadena, California, and had access to Selective Service files in that office. Gary Stevens Langley was a registrant with Local Board 94, located at the same address. Appellant Azadian was a friend of Miss Daniel.

Langley was to report for a physical examination on May 23, 1969. His father, Gene Langley, was a correctional counselor at Chino State Prison. Before the reporting date, the senior Langley importuned one. Paul Lewallen to assist in changing his son's draft status. Lewallen was a parolee and one of Langley's former charges at the prison and known to be acquainted with Miss Daniel. He was also a government informant.

Lewallen called upon Miss Daniel and there followed conversations between them, the two Langleys and Azadian. Lewallen was the intermediary. All agreed that Gary would not report for his physical examination and that a letter with a false explanation would be sent to his draft board. Because of their joint efforts in transmitting this false information to the board, he and Miss Daniel were convicted of one count charging them with conspiring to defraud the United States. Appellant was found not guilty on that count.

Two days after Gary failed to take his physical examination, Lewallen became a cooperating informant for the Federal Bureau of Investigation. His conversations with the defendants and Gene Langley were recorded. Miss Daniel was reluctant to talk with Lewallen and referred him to Azadian. It was agreed between Miss Daniel, Azadian and Gene Langley that Gary's draft classification would be changed.

The amount of the bribe was not agreed upon, Gene Langely suggesting that a referral system be developed by which Azadian would receive five other registrant clients who would pay, for similar service, $1,000 to $2,000. Azadian wanted cash as well as the referrals and Lewallen ultimately paid him $2,000 in F.B.I. funds, representing that the money came from Gene Langley.

According to Azadian, Miss Daniel was reluctant to consummate the plan. She had been recently promoted, was fearful of an F.B.I. investigation, had been opposed to the plan initially and did not want Azadian to accept the money. Azadian replied that $2,000 was too good to turn down and he hoped to persuade her to change her mind. However, she did not alter Gary's file or classification.

Clearly, Azadian wanted to consummate the matter when Miss Daniel hoped to withdraw, and he wanted to use her to assist future prospects. She was charged with a violation of 18 U.S.C. § 201(c), $i.$ $e.$, directly or indirectly soliciting, accepting, receiving or agreeing to receive something of value in return for using influence in her official actions. Azadian was charged, under 18 U.S.C. § 2, with aiding and abetting her. He was found guilty but the district court found that Miss Daniel had been entrapped and dismissed that charge against her.

Can Azadian's conviction of aiding and abetting be sustained when his principal, Miss Daniel, has been found not guilty because of entrapment? We conclude that it can.

In Carbajal-Portillo v. United States, 396 F.2d 944 (9th Cir. 1968), the principal (Carbajal) was entrapped while the aider and abettor (Vega) was not. The aider and abettor expressed a willingness to go forward that was not affected by the circumstances under which the principal was entrapped.

In affirming the conviction of the aider and abettor the court said:

"The defense of entrapment is not available to everyone who is induced, against his prior disposition, to com-

mit a crime. It is available only where such inducement was by, or was occasioned by, a Government agent. It is made available not because inducement negatives criminal intent and thus establishes the fact of innocence; but because Government agents should not be permitted to act in such a fashion. The defense does not so much establish innocence as grant immunity from prosecution for criminal acts concededly committed. Here Carbajal goes free because what was done to him was done by a Government agent. Vega must face the consequences of his criminal conduct because the Government agent played no part in inducing his crime." *Id.* at 948.

Azadian was not entrapped. He desired and intended to go forward when his principal announced an intent to withdraw. The defense of entrapment is not available to him because the rule in this circuit requires that he admit the criminal act before he can successfully assert that he was entrapped. Ortega v. United States, 348 F.2d 874 (9th Cir. 1965).

Appellant's other argument concerning the alleged inconsistency between the indictment and the conduct of the parties has been considered but is deemed lacking in merit. *See* Hurley v. United States, 192 F.2d 297 (4th Cir. 1951).

The decision of the district court is affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. Despite anything which has been written to the contrary, I think it simply illogical that one can be found guilty of aiding and abetting in the commission of an offense which has been held not to have occurred. As our Brother Barnes wrote in United States v. Jones, 425 F.2d 1048 (9th Cir. 1970), which, incidentally, the majority ignores: "There is no question

but there must be a guilty principal before there can be an aider or abettor." *See also* Edwards v. United States, 286 F.2d 681 (5th Cir. 1960); United States v. Titus, 210 F.2d 210 (2d Cir. 1954); Karrell v. United States, 181 F.2d 981 (9th Cir.), cert. denied, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950).

Even were this not the law, I would reverse Azadian's conviction. The majority's reasoning, as I understand it, is that the immunity granted to an entrapped principal should not extend to one who aided and abetted the commission of the otherwise criminal acts of the principal. In support of its position, the majority relies solely upon Carbajal-Portillo v. United States, 396 F.2d 944 (9th Cir. 1968). In my humble opinion, however, that decision does not support the majority's reasoning in the instant case. The policy that immunity should be granted to those whom government agents have entrapped into commission of criminal acts is, as *Carbajal* itself recognized, that it is not

"right and just that a Government should instigate and successfully pursue prosecution for the commission of an act which the prosecuted would not likely have committed but for the importunity of an agent of the Government itself."

*Id.* at 946 (quoting from Notaro v. United States, 363 F.2d 169, 173 (9th Cir. 1966)). In *Carbajal*, the majority, over the well-reasoned dissent of District Judge Gray, was swayed by the fact that the narcotics agent who entrapped Carbajal had nothing whatsoever to do with the decision of Carbajal's codefendant, Vega, to aid and abet Carbajal in the illegal importation of heroin into the United States. The agent had never met Vega, nor had he even suggested to Carbajal that another person be employed. Vega was a volunteer, and there was no suggestion to the contrary.

Here, the same cannot be said. The plan and method for the falsification of

**84**

Langley's draft records originated with Lewallen, the Government's agent. *He* approached Daniel and, on her suggestion, the appellant, also. *He,* not Daniel, negotiated with Azadian. *He,* not Daniel, gave Azadian $2,000 in Government funds. While subsequent to Daniel's change of heart, Azadian still desired to consummate the deal, the impetus for Azadian's conduct derived, not from Daniel, but from the overreaching zeal of the Government. It is one thing when a principal, such as Carbajal, decides on his own to solicit help in the commission of an offense. It is quite another, I think, when both the principal and the aider and abettor are solicited and guided, from the beginning, by a hand of the Government itself.

My Brothers appear to believe that the inability of a defendant in the Ninth Circuit to assert entrapment as a defense, unless he admits the act supposed to constitute the crime, supports their position. I, however, submit that the precise issue now before us is a different one. We are called upon to decide, not whether Azadian can assert that he, himself, was entrapped, but whether he can rely on the admitted entrapment of Daniel, the principal acquitted of the crime with which he was charged with having aided and abetted. In *Carbajal,* the resolution of that abstract question was expressly reserved. In the circumstances of this case, the Government's far deeper involvement with Azadian should require that his conviction be set aside. The noble image of our Government is tarnished when it successfully prosecutes one for involvement in acts which, save for its own seduction, would not have been committed. I deplore the prospect that my Brothers' opinion could encourage an eager Government agent to engage in reprehensible conduct in order to lure others, as aiders and abettors, into a web of criminality, even while knowing that his principal entrapee would escape conviction.

I would reverse.