**UNITED STATES of America**

**v.**

**Angel Manuel SILVA, Defendant.**

United States District Court
S. D. New York.

March 4, 1959.

Arthur H. Christy, U. S. Atty., New York City, Mark F. Hughes, Jr., New York City, of counsel, for plaintiff.

Florence M. Kelley, New York City, Bernard Moldow, New York City, of counsel, for defendant.

WEINFELD, District Judge.

To charge a man with a crime is a serious matter; and so the law, through the accumulated wisdom of experience through the generations, requires that before a charge, with its serious consequences to an accused, may be upheld, the prosecution has the burden of establishing the defendant's guilt beyond a reasonable doubt. The rule as to the burden of proof is no less binding upon this Court as the trier of the fact than it is upon a jury of twelve men and women.

In instructing juries on this issue, the Court in traditional charges has always said that unless the jurors have an abiding conviction of a defendant's guilt, which amounts to a moral certainty—such a conviction as they would be willing to act upon in important matters in their own lives, then their duty is to acquit because a reasonable doubt would exist under that circumstance.

The Government here has the burden of proof upon the entire case. The defendant has acknowledged the basic facts, that he delivered the drugs and received money on the two occasions set forth in the indictment, but denies he was in fact a principal or a participant otherwise to the transaction and pleads the defense of entrapment—that the crime was induced

by the actions and conduct of a Government agent.

■ As to this issue of entrapment, the defendant has the burden of going forward. But upon the entire case, the burden of proving guilt beyond a reasonable doubt still is upon the Government.[1]

■ The defense of entrapment was first fully articulated by Chief Justice Hughes in the landmark case of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; and the contours of its holding were further delineated most recently in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 821, 2 L.Ed. 2d 848 when Chief Justice Warren said:

"Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. * * * To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

The issue thus posed in this case must be resolved on the basis of the conflict of testimony between Pabon—the Government's special employee, the informer —and the defendant. Essentially it turns upon the credibility of these witnesses.

Undoubtedly the defendant is vitally interested in the outcome of the case, and in appraising credibility the Court will take this into account. But it is equally true that an informer, particularly because he is the one responsible for the charge, may be said to be an interested witness. In any event, such testimony must be viewed with great caution.

The defendant, as stated, concedes the transactions which came after he asserts he was led into drug use by the informer who originally gave him drugs free of charge. This continued for a period of time, but later the informer charged the defendant $5 per shot which the informer injected intravenously in the defendant by the use of a hypodermic needle, since the defendant was unable to use one. Essentially the defendant claims that he not only became ill but an addict.

The defendant's version of the first transaction in the indictment is that in need of a shot, but without money, he went to the room of the informer, who said he would take care of the defendant's need if the defendant would deliver a package to a person at the defendant's residence; that ill, because of lack of drugs, he agreed thereto; the informer gave the defendant a package—the defendant raises no issue but that he knew its contents—and told him to take it to his, the defendant's, apartment where the informer said he would appear later with another person to whom he was to deliver the package and receive from the third person $100. The third party, it later developed, was a narcotics agent who testified at the trial.

The transaction took place as arranged. Following its consummation, the narcotics agent and the informer left the defendant's premises together. In a little while the informer returned alone to the defendant's apartment where the defendant turned over to him the $100 received upon the transaction. Then the defendant and the informer went to the latter's apartment where he received an injection of drugs from the informer which was the price, the defendant says, for his services.

The second transaction, which took place about twelve days later, follows a substantially similar pattern except as to the place of consummation, which was in the street, and the amount for the sale of the drugs, which this time was $125. The defendant again went to the informer's room for a shot, who stated he would take care of him if he would carry through as on the prior occasion. At the time of the original transaction, when the defendant asked the informer

---

[1]. See United States v. Sherman, 2 Cir., 240 F.2d 949; United States v. Sherman, 2 Cir., 200 F.2d 880; Henderson v. United States, 5 Cir., 261 F.2d 909.

why he did not make direct delivery, the latter stated he owed the third party money and if he personally made delivery he would not receive payment.

The informer, in the Government's direct case, under direct examination by Government counsel, swore that he never gave or sold drugs to the defendant and that his sole relationship to him with respect to narcotics was the introduction of the Government agent to effect the sales. The informer was not recalled in rebuttal to challenge the specific and detailed testimony of the defendant as to his initiation by the informer into the use of drugs, the injection of drugs into the defendant by the informer, and of his having led the defendant into the two transactions with the narcotics agent.

The defendant states he became so ill as a result of the use of drugs that within three weeks after the second transaction he returned to Puerto Rico where he completed the remainder of a high school course and cured himself of his drug habit. His stay there was interrupted after nine months when he was arrested and returned to the United States to face the present charge.

Except for a disorderly conduct offense in Puerto Rico the defendant has no prior record or any conviction.

I have had full opportunity to observe Pabon, the informer, and the defendant. The informer's activities are spread upon this record. He was a professional special employee who was paid by Federal Narcotics Agents with Government funds for each case he "made". Payment was dependent upon the informer "making" a case, which meant an initial introduction and a sale to a narcotics agent. In all, the informer "made", according to his own testimony and that of the agent, eighteen cases including this one. This appears to have been his sole business over a period of two years. During the period of his service as a paid informer, he was convicted in the State Court on a narcotics charge. Previously, while in the Army, he had been convicted

of two separate offenses and had been dishonorably discharged.

In the exercise of restraint and moderation, and bearing in mind that perhaps at times the use of informers is required in fighting the evils of the illegal drug activities, I shall not characterize the informer's testimony further than to say it not only abounds in substantial and material contradictions but is utterly unreliable, untrustworthy and undependable. Since the informer was to be paid only in those cases wherein his efforts were successful, and his livelihood was dependent upon the funds derived from his activities, he had every motive to induce the commission of the offense charged to this defendant, who was in desperate need to satisfy his drug habit which resulted from his initiation by the informer. He had every motive to testify falsely. Indeed, if Agent Doyle's testimony is accepted as to the alleged advance of monies with respect to the bail premium incident, then Pabon committed perjury before this Court.

On the other hand, based upon my observation of the defendant and his demeanor, I find his story entirely trustworthy and credible. Moreover, as I indicated just a few moments ago, when Government counsel summed up, I have some difficulty in understanding why, if the defendant was in fact the seller he is alleged to have been, the Government did not avail itself or the agent did not avail himself of the offer to furnish the sources of his supply allegedly made by the defendant after the two transactions.

██ Upon all the evidence I cannot say that I have that moral certainty of the defendant's guilt which is a prerequisite to a holding that the Government has sustained its burden of proof. There is not in this case that solid substance of testimony which should be the basis upon which men are found guilty and upon which it can be said the Government has sustained its burden of proof. In sum, the Government has failed to establish its charge beyond a reasonable doubt.

██ I find that the criminal conduct participated in by this defendant was the

product of the creative activity of Pabon, the Government informer. The defense has been fully sustained.

Accordingly the motion to direct a verdict of acquittal is granted, and the Court upon all the evidence finds the defendant not guilty.

The foregoing shall constitute the Court's findings of fact and conclusions of law.