**Rudy NOTARO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20355.**

United States Court of Appeals
Ninth Circuit.

July 11, 1966.

---

Harry E. Claiborne, Las Vegas, Nev., for appellant.

John W. Bonner, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before HAMLEY, HAMLIN, and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellant was convicted in a jury trial of the violation of Section 176a of Title 21, United States Code. At the date of his conviction he was under twenty years of age, and upon the denial of his motion for new trial, he was sentenced under the provisions of the Federal Youth Corrections Act. 18 U.S.C. §§ 5005–5024. This appeal followed.

The conviction rests upon the sale by appellant of three and one-half ounces of marijuana, an offense which, while admitted, was defended upon the claim that it resulted from illegal entrapment.

In our court, appellant presents two serious contentions, (1) that viewed as a whole, the evidence established as a matter of law that the Government lured and entrapped the appellant into the commission of the offense and that the district judge improperly submitted the issue to the jury so as to permit a finding to the contrary and (2) that certain instructions given to the jury were misleading and prejudicially erroneous.

The alleged entrapment was accomplished by one Harry Midby, a Las Vegas, Nevada, automobile painter. Midby had first become acquainted with appellant approximately two and one-half years before September 9, 1964, the date of the commission of the offense. He had met the appellant through their common acquaintanceship with two other young men, and the four had seen each other from time to time until four or five months prior to the time when the sale of marijuana occurred. Midby, at a time when he himself had been arrested, had become acquainted with certain special agents of the Government. In either mid-July or late August, 1964, Midby became acquainted with Richard Salmi, a United States Treasury agent employed by the Federal Bureau of Narcotics. Midby volunteered to give his services to Salmi and requested no compensation. A short time thereafter, Midby, who, as has been recited, had not seen appellant for four or five months, visited a restaurant where appellant was employed as a fry cook. Midby testified that before this first visit to the restaurant, but "around September 1st", he had accompanied appellant and the latter's brother to a place where "they bought some dope". Between September 1, 1964, the date or near the date of Midby's first visit to the restaurant, and September 9, 1964, Midby made several additional visits to appellant's place of employment on different days. On these occasions, they were seen to be engaged in private conversation, and the testimony of Midby and appellant in their recitation of the conversations is in marked conflict. The thrust of appellant's testimony is that Midby represented that he wished to buy some marijuana "for a racketeer, someone tough from Sacramento" and that he, appellant, repeatedly told Midby, "No, not just a blunt no, but I evaded him so he would leave and then he left". Continuing,

"Q Tell us what he would say to you, Rudy, what would he say to you on those occasions?

"A He wanted to know if I could get it, any way he could get it, and that it was important to him that I get it and that he had someone who could buy, who would buy all I could get.

"Q And what did you say on each of those occasions to that?

"A No."

On September 8, 1964, Midby visited appellant's home offering, testified ap-

pellant, to take the latter to a place where marijuana might be purchased. Appellant insisted that his reply to Midby was, "No, I don't want anything to do with it." Appellant testified that on the following day, September 9th, Midby visited the restaurant, told the defendant that the "gangster or racketeer" was in town, and that he, Midby, wished to see appellant when the latter had completed his day's work. When the appellant arrived at his home, an automobile was driven into the driveway, and Midby, having knocked at the door, was admitted. According to appellant's testimony, "Midby acted real jumpy", and observing that the appellant's sister-in-law was present, requested that appellant occompany Midby into the appellant's bedroom. There Midby said, according to appellant, "The guy is here that I was telling you about and he is right outside and I am in a jam and he is here for his marijuana and I haven't got it." Appellant testified that he replied that "he couldn't get it" whereupon Midby produced a package, requesting of appellant, "You give it to him, you give him the marijuana and you tell him you got it and that you got hung up and that in a month or so you could get all he wanted and that way I can get him off my back now." ·Appellant concluded by testifying that he complied with the request and that thus, the sale was accomplished.

Midby, on the other hand, testified that it was the appellant and not he who produced the marijuana for sale. Furthermore, he insisted that on one of his first visits to the restaurant, appellant had indicated that he would be receiving a shipment of marijuana in about a week, that his "boat would be in." When, according to Midby, he told appellant that he had a friend who might be interested in purchasing marijuana, appel-

lant replied, in effect, that Midby should let him know when the friend arrived. On September 9, 1964, testified Midby, he informed appellant that the friend had arrived, and appellant stated that he, willing to make the sale, would meet Midby and the friend at appellant's home between four and six o'clock p.m.

■ It was not shown that appellant was a user of narcotics, nor was it shown that he had been previously involved in the violation of law.[1]

In the light of Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848 (1958), the defendant made a strong case for his defense of entrapment. This was recognized by the trial judge, who candidly remarked, during the hearing on sentence,

"I think if the jury had been waived and the case had been tried by me, because of the closeness of the question of entrapment * * * I think I would have found entrapment * * * so it is with great reluctance that I commit this young man to custody in this case."

■ We agree with the district judge that the question is close indeed. Midby, though not paid for his activity, was an agent of the United States acting in concert with the Government's law enforcement officer.[2] The contacts between appellant and Midby were initiated by Midby, who repeatedly sought out appellant at the latter's place of employment. The finder of the facts might quite easily have determined that it was Midby who originated the unlawful design and that appellant was lured into the commission of the offense by illegal overtures and intrigue. It did not so conclude, however, and from our vantage point, we are not persuaded that we should overturn the determination. As

1. Evidence of this character is admissible as tending to create inferences opposed to the claim of entrapment. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

2. " * * * The entrapment defense does not extend to inducement by a private

citizen; yet it has found general application to cases where the officer acts through a private citizen, as in the case at bar." Johnson v. United States, 115 U.S.App.D.C. 63⅝, 317 F.2d 127, 128 (1963). See also Henderson v. United States, 237 F.2d 169, 61 A.L.R.2d 666 (5th Cir. 1956).

has been said, there were sharp conflicts between the testimony of appellant and the testimony of Midby. The credibility of each was put in question, and their demeanor and attitude, not observable to us here, was subject to scrutiny by both the judge and jury. When, as here, the result of the trial was so dependent upon the conflicting testimony of two witnesses and when the trial judge refused to disturb the jury's determination in spite of his own expressed leaning toward an opposite conclusion, we cannot bring ourselves to interfere. See Marin v. United States, 324 F.2d 66 (9th Cir. 1963), cert. denied, 379 U.S. 806, 85 S.Ct. 91, 13 L.Ed.2d 73 (1964).

Appellant's second contention is well taken, and there must be a reversal.

The court instructed the jury, inter alia, as follows:

"If, then, the jury should find *beyond a reasonable doubt* from the evidence in the case that before anything at all occurred respecting the alleged offense involved in this case, the accused was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was offered and that the Government agents did no more than offer the opportunity, the accused is not entitled to the defense of unlawful entrapment.

"*On the other hand, if the jury should find from the evidence in the case that the accused had no previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some agent of the Government, then the defense of unlawful entrapment is a good defense and a jury should acquit the defendant.*" [3] (Emphasis added.)

One's attention is immediately drawn to the fact that the first paragraph of the quoted instructions properly casts the burden of proof, while the second paragraph, beginning "On the other hand" and emphasizing the converse, omits inclusion of a guiding standard. Seeking clarification, appellant's counsel made timely request for an instruction reading, "In this regard, if the jury should have any reasonable doubt from the evidence in the case as to whether the defendant was the victim of an unlawful entrapment, the jury should acquit the accused."

We look briefly at certain precedents which furnish a background. The first full treatment of the defense of entrapment appears to have been given by Chief Justice Hughes, speaking for his Court in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249 (1932). It was not thought to be right and just that a Government should instigate and successfully pursue prosecution for the commission of an act which the prosecuted would not likely have committed but for the importunity of an agent of the Government itself. Since the decision in *Sorrells*, the validity of the defense has been more firmly established and its elements more clearly defined. Sherman v. United States, supra; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462

3. These quoted instructions were immediately preceded by the following:

"The law recognizes two kinds of entrapment, unlawful entrapment and lawful entrapment. Where a person has no previous intent to violate the law, but is induced or persuaded by law enforcement officers to commit a crime, he is entitled to the defense of unlawentrapment because the law as a matter of policy forbids a conviction in such a case.

"On the other hand, where a person has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is no defense, but is lawful entrapment. When, for example, the Government has reasonable grounds for believing that a person is engaged in the illicit sale of narcotics, it is not unlawful entrapment for a Government agent to pretend to be someone else and to offer either directly or through an informer, or other decoy, to purchase narcotics from such suspected person."

(1963). The Supreme Court has not, however, fully articulated its views as to the manner in which jury instructions as to the burden of proof in cases presenting the issue of illegal entrapment should be refined.[4]

In United States v. Sherman, 200 F.2d 880 (2d Cir. 1952), it was written by Judge Learned Hand, "[I]n such cases two questions of fact arise: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it." 200 F.2d at 882–883. This language created uncertainty because the word "induce" in number (1) of Judge Hand's "two questions of fact" might be mistakenly equated with "entrap".

In United States v. Pugliese, 346 F.2d 861 (2d Cir. 1965), the conviction of one claiming to have been entrapped was reversed because "the case was very close" and because a jury instruction was thought to be so ambiguous that "the jury quite likely understood 'inducement' not narrowly but as encompassing the crucial issue of improper pressure." The instruction was adopted from the language of Judge Hand to which we have just made reference.

In Gorin v. United States, 313 F.2d 641 (1st Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963), the court wrote of the defendant's burden in terms of the standard ordinarily applied in civil cases, saying, " * * * we think that one who raises the defense should be required not only to come forward with evidence but should also be required to establish inducement by a preponderance of the evidence." 313 F.2d at 654.[5] In Sherman v. United States, supra, the Supreme Court held that the defense of entrapment had been established as a matter of law, although the defendant did not testify and did not, in one sense, "come forward" with *any* evidence which bore upon the defense. In another sense, he did "come forward" in that, by cross-examination of government witnesses, he established that the crime was "induced", although the determination of the ultimate conclusion as to whether there was "entrapment" remained for the Court. Therefore, it seems quite clear that when it can be said that the issue of entrapment has fairly arisen, whether by testimony given during the presentation of the prosecution's case in chief or by testimony offered in defense, the defendant has met whatever "burden" rests upon him.[6]

4. Such a discussion was not thought proper in Lopez, supra, wherein the jury was instructed, "The burden of proof with respect to entrapment is on the defendant. * * *" The Court noted "Petitioner made no objection to this instruction, or to any other aspect of the charge." Furthermore, Lopez "did not request judgment of acquittal" on the ground of entrapment. He requested no "instruction on the point", nor did he "offer at the trial any evidence particularly aimed at such a defense." 373 U.S. at 433, 83 S.Ct. at 1385. In this state of the record, the failure of the court to examine the instructions pertaining to entrapment is readily understandable.

5. In requiring a defendant to establish *inducement* by the civil standard of "preponderance of evidence", the First Circuit cited a proposed model penal code which would inject the civil stand-

ard to an even greater degree in its provision that "a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment". ALI Model Penal Code. Entrapment § 2.13(2) (Proposed Official Draft 1962). The proposed provision was criticized by the Court in Whiting v. United States, 1 Cir., 321 F.2d 72 at 77 n. 12, and we must reject it also. Liberty is too priceless to be made so significantly dependent upon a jury's ability to interpret fine distinctions and to apply different measures or standards as to the burden of proof in a criminal case.

6. The "burden" is insignificant. The issue of entrapment is presented "however incredible * * * [the evidence which raises it] might appear to the trial court or to [the appellate] court." Lutfy v. United States, 198 F.2d 760, 762,

The duty of determining whether or not the issue exists is the judge's duty, not the jury's, and if the issue exists and the determination of the ultimate question of entrapment is submitted to the jury, "it is better [that the instructions not] speak in terms of the defendant having [any burden whatsoever]." Johnson v. United States, 115 U.S.App. D.C. 63, 317 F.2d 127, 129 (1963). The issue having appeared, it becomes the prosecution's burden to establish beyond a reasonable doubt that the accused was not entrapped into the commission of the offense.

The First Circuit, citing, but not distinguishing, its prior decision in Gorin v. United States, supra, has now recognized that "the burden is on the government to show that he [the defendant] was not impermissibly entrapped", although it added, "We need not decide whether the government is obliged to meet the criminal standard, * * *." Whiting v. United States, 321 F.2d 72, 75 n. 6 (1963). In the body of its later opinion, the First Circuit, at page 77, emphasized its "belief that a defendant should not be convicted in any event where the government fails to show at the trial that he was not corrupted by the inducement." The quoted language recognizes that the Government must meet a burden of *some* standard which the court left undefined. To us, it would seem unwise to define that burden as any less or any greater than that traditionally carried by the prosecution in a criminal case. We find support in Waker v. United States, 344 F.2d 795 (1st Cir. 1965), wherein it was held that as to the issue of defendant's criminality or corruption having been induced by a government agent, "On this issue, once inducement has been shown, the burden is on the government beyond a reasonable doubt.[3] (Citing United States v. Landry, 257 F.2d 425, 429 (7th Cir. 1958); Lunsford v. United States, 200 F.2d 237, 239–

240 (10th Cir. 1952).)" 344 F.2d at 796. The footnote reference "3" is to the Court's expressed opinion, with which we agree, that " * * * it would be unduly confusing to instruct the jury that the government's burden is any the less on this issue than it is on other parts of its case." 344 F.2d at 796 n. 3. See also United States v. Silva, 180 F.Supp. 557 (S.D.N.Y.1959), wherein the defendant, while acknowledging the commission of an offense, pleaded entrapment. The issue having been raised, Judge Weinfeld wrote, "But upon the entire case, the burden of proving guilt beyond a reasonable doubt still is upon the Government." 180 F.Supp. at 558.

When a party has the burden of proof as to a factual issue, it cannot be proper that instructions pertaining to the issue are so vague or ambiguous as to permit of misinterpretation by the jury of the standard which is to be applied. The desire of a careful judge to avoid language which to him may seem unnecessarily repetitive should yield to the paramount requirement that the jury in a criminal case be guided by instructions framed in language which is unmistakably clear.

Looking to the instructions which concern us here, the first paragraph properly conveyed advice to the effect that the appellant was not entitled to acquittal because of unlawful entrapment if it should be found "beyond a reasonable doubt" that he was ready and willing to commit the offense whenever the opportunity was offered and that "the Government agents did no more than offer the opportunity". The second paragraph, however, following immediately, pointed directly to the elements of the defense itself, emphasizing that if the appellant "had no previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some agent of the Government", then he

33 A.L.R.2d 879 (9th Cir. 1952). We believe that if the defense of entrapment is claimed, a showing, however presented, that the commission of the offense was attended by the intervention of a government agent is sufficient.

was entitled to acquittal. Since this instruction commenced with the language "On the other hand, if the jury should find from the evidence in the case", it is reasonably probable that the jurors were confused. The employment of the words "On the other hand" in the critical paragraph, absent enlightenment as to the burden of proof, could, of themselves, have created the impression in lay minds that the appellant carried the burden as to the positive elements of his defense.

It will be seen also that under the questionable instruction, the jury was not permitted to acquit the accused unless it "*should find* from the evidence" that there existed the necessary elements of the defense. (Emphasis added) This was improper, since in requiring that the jury "should find" certain facts, the existence of which were made indispensable to acquittal, a definite, conclusive, determination of disputed factual issues was required of the jury as a condition to acquittal. Such a requirement was erroneously imposed. The appellant was indeed entitled to acquittal if the jury "should find" that he "had no previous intent or purpose to commit" the the offense "and did so only because he was induced or persuaded by some agent of the Government". But he was also entitled to be acquitted if, from the evidence, the jury, because of the entertainment of reasonable doubt, should be unable to "find" that the necessary elements of the defense had not been excluded.[7]

In reaching our conclusion, we have been mindful of obligation to consider the instructions in their entirety. The jury was properly informed, in a general instruction, as to the burden of proof which rested upon the prosecution; however, we cannot assume that it carried the advice of the general instruction into application to the instruction emphasizing the specific elements of the defense. The possibility that there was confusion or misunderstanding is strengthened, not eliminated, by view of the instructions as a whole.

The judgment of conviction is reversed. The appellant is entitled to a new trial.

Reversed and remanded.

---

7. See United States v. Pugliese, 346 F.2d 861 (2d Cir. 1965), wherein appears criticism of jury instructions which undertook, as did the instructions in the case at bar, to distinguish between "lawful entrapment" and "unlawful entrapment". Judge Waterman wrote "According to current usage, however, what the trial judge referred to as 'lawful' entrapment is not entrapment at all. To depart from this usage is to invite needless confusion." (Citation omitted.) 346 F.2d at 865. The Court, not uniquely, did "not decide * * * how heavy a burden of proof, if any, the government should bear. * * *" on the issue of entrapment because, it explained, "[the point has] not been briefed by either party * * *." 346 F.2d at 864 n. 1.