**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony Sal GUIDICE, Anthony Steven Fontana, and Joseph Frank Marulli, Defendants-Appellants.**

**Nos. 608–610, Dockets 34127, 34209, 34504.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1970.

Decided April 29, 1970.

Charles Ruff, Atty., Department of Justice, Washington, D. C. (Edward R. Neaher, U. S. Atty., for Eastern District of New York, and David M. Quinn, Washington, D. C., on the brief), appellee.

John S. Martin, Jr., New York City, Attorney for appellant Anthony Sal Guidice.

Phylis Skloot Bamberger, New York City (Milton Adler, New York City, The Legal Aid Society, on the brief), for appellant Anthony S. Fontana.

Arthur Levine, Mineola, N. Y. (Stone & Levine, Mineola, N. Y., on the brief), for appellant Joseph Frank Marulli.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and DOOLING, District Judge.*

LUMBARD, Chief Judge:

Anthony Guidice, Anthony Fontana and Joseph Marulli were indicted in ten counts for the sale, possession, and passing of counterfeit money on three occasions, and for conspiracy, in violation of 18 U.S.C. §§ 472 and 2, and 371. At the conclusion of their jury trial in the Eastern District of New York, Judge Judd dismissed the three counts charging passing of the notes. Guidice was convicted on all of the remaining seven counts: three counts of sale of counterfeit notes and three counts of possession of counterfeit notes corresponding to three transactions proved by the government, and one count of conspiracy. He received concurrent sentences of five years' imprisonment on each count. Fontana was convicted on the conspiracy count and one count of sale of counterfeit notes; he received concurrent sentences of one year's imprisonment on

---

* Sitting by designation.

each count. Marulli was convicted of one count of possession of counterfeit notes, and was sentenced to imprisonment of one year.[1] They appeal on the ground that the trial judge committed errors during trial and in his charge to the jury. We affirm the convictions.

The government's case rested primarily on the testimony of an undercover agent of the Secret Service, Richard Ward, who testified that he purchased counterfeit money from Guidice on three occasions—June 13, July 1, and July 3, 1968, at or near the Blue-and-White taxi stand, a one-room business operated by Guidice in Port Jefferson, New York.

Ward was introduced to Guidice as "Pete Meyers" by an unidentified informer. After some preliminary conversation Guidice asked Ward if he "knew the story about the notes" and then told him that the price was $40 per $100 of face value for the counterfeit money. Ward also stated that Guidice told him that he had no notes available then, but that Ward could telephone ahead and come and pick them up.

On June 12, Ward called Guidice, but Guidice refused to talk about notes over the telephone. He told Ward to come to the taxi stand, and Ward went there on the following day, June 13. When he arrived, Fontana was "in and around" the taxi stand. Guidice asked Ward how much he wanted to spend, and Ward replied that he had $200 to spend for counterfeit. During the next hour, Guidice left the taxi stand and returned, received several phone calls, and left a second time. Before leaving the second time, Guidice told Ward to soak the notes in coffee to simulate age and thus make them easier to pass. Guidice finally returned in his car—a Ford station wagon—and picked up Ward. The two men drove around Port Jefferson, and Guidice gave Ward a brown paper bag containing eight counterfeit tens; he told Ward that the price was $35. Ward paid Guidice and they returned to the taxi stand.

According to Ward, the second sale occurred on July 1, 1968, after Ward had called Guidice on June 27 to arrange a meeting. When Ward arrived about 10 a. m., Fontana and Marulli were both present; they told Ward that Guidice would be back in a few minutes. Marulli then said that Guidice was driving his car, meaning Marulli's gray 1963 Lincoln Continental. Shortly thereafter, Guidice drove up in the gray Lincoln, entered the stand, greeted Ward and the others, and asked how much Ward wanted. Ward told him that he had $160 to spend, and Guidice answered that that would buy $400 worth.

During this conversation, Fontana left the stand and started to drive away in "the car"; the jury could infer that this testimony referred to Marulli's gray Lincoln, since there was no testimony about any other car being present at the stand on that day. As Fontana started to drive away, Guidice ran out of the stand, waved to Fontana to stop, and walked over to the car. At this point, Guidice and Fontana were out of Ward's sight for thirty seconds; at the end of this period Guidice returned to Ward and Marulli in the stand, locking the door after he entered. He carried a brown paper bag, and after sitting down at a table, he removed a stack of ten dollar notes "three or four inches thick" from the bag. Ward, because of his training as an agent of the Secret Service, was able to identify the money as counterfeit. At this time Marulli was standing behind and to the left of where Guidice was seated. Guidice exchanged $400 worth of ten dollar notes from his stack for $160 which Ward gave him. There was a sizable stack of counterfeit notes remaining, since Ward estimated that the original pile of bills contained

---

1. The one-year sentences imposed on Fontana and Marulli were to be served as follows: four months in jail, with eight months suspended, and two years' probation.

$4000 to $5000 in counterfeit tens. Guidice handed the remaining stack of counterfeit notes to Marulli, saying "count the rest of these." Marulli began to count the notes on the table. Guidice told Ward to call him if he needed more, Ward replied that he would, and before he left the taxi stand, Ward said, "Save the rest of those. I'll be back in a couple of days for the rest of the counterfeit." Marulli was present in the stand —a small, one-room building—during this conversation.

On July 2, 1968, Ward again called the stand. Guidice told him to come out, and on July 3 Ward, carrying genuine currency bearing serial numbers which had been recorded at his Secret Service office, went to the taxi stand around 9:00 a. m. No one was present, but Fontana soon arrived, opened the stand, and said that Guidice would be there in a few minutes. Guidice arrived and asked how much Ward wanted. Ward asked for $400 or $500. Guidice then left Fontana and Ward, who were in the office, but he returned within two minutes, locked the door, and began counting out counterfeit ten dollar notes on the table. Guidice stated, "There's 39 notes. How much would that be?" Fontana said, "$120," and Guidice said "No. They are $40 a hundred." Fontana then said, "Oh. Then they'd be $160." Since that price was still not correct for the odd number of 39 notes, Ward and Guidice agreed that Guidice would owe Ward one counterfeit note.

Upon leaving the taxi stand, Ward gave a prearranged signal and Guidice and Fontana were arrested by other agents of the Secret Service and Suffolk County Police. The lawmen simulated an arrest of Ward as well. The recorded government currency was recovered from Guidice, and the 39 counterfeit notes were found on Ward. Marulli was arrested over a month later.

There was ample evidence to support the convictions of the three appellants.

## I. Guidice's Defense of Entrapment

Guidice testified at the trial, admitting that he had furnished Ward with counterfeit money on two or three occasions. However, he claimed that he did so only because he was constantly pressured and solicited to do so by Ward. His sole contention on appeal is that the trial judge erred in two respects in charging the jury on the defense of entrapment.

■ Judge Judd's charge regarding the circumstances in which entrapment would be fatal to the prosecution was given exactly as requested by defendant Guidice's trial counsel, and no objection was made to its form or content by any of the parties. Thus, the defects, if any, in the charge must rise to the level of "plain errors * * * affecting substantial rights" in order to justify reversal. Federal Rules of Criminal Procedure, rule 52(b).

■ Guidice argues that the jury might have thought that he was required to prove entrapment beyond a reasonable doubt, instead of by preponderance of the evidence. We do not agree.

Judge Judd's charge adequately and correctly informed the jury of their duties in passing on the entrapment defense:

"If you are satisfied that prior to the commission of the acts alleged to constitute the crimes, the Defendant Anthony Guidice never conceived any intention of committing the alleged offense, but the Secret Agent, Richard Ward, solicited, encouraged and in other ways induced the Defendant Anthony Guidice to commit the offense alleged, and that the Defendant Anthony Guidice was not then otherwise disposed to so commit the alleged offense in order to entrap, arrest, and prosecute him therefor, then these facts are fatal to the prosecution and

the Defendant, Anthony Guidice, is entitled to a verdict of not guilty.[2]

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact the Government agents provide what appears to be a very favorable opportunity is no defense, but is a lawful entrapment.

"If, then, the Jury should find beyond a reasonable doubt from the evidence in the case, that before anything at all occurred respecting the alleged offense involved in this case, the accused was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was offered, and that the Government agents did [no] [3] more than offer the opportunity, the accused is not entitled to the defense of unlawful entrapment."

In the first paragraph of the quoted portion of the charge—the part requested by Guidice's trial counsel—Judge Judd delineated what was necessary for Guidice to prevail on the defense. "Burden of proof" is not mentioned at all. Thus, the jury was directed "[i]f you are satisfied" of certain facts, "then those facts are fatal to the prosecution." The judge then went on to state, "[o]n the other hand," if the defendant had a predisposition to commit an offense and government agents merely provided the opportunity, the defense would fail. In the third paragraph, the judge stated that in order to defeat the defense, the jury had to find beyond a reasonable doubt that defendant was ready and willing to commit offenses such as those charged in the indictment whenever the opportunity arose, "and that the government agents did [no] more than offer the opportunity." We think the trial judge's presentation clearly indicated to the jurors that the government's burden was the heavier of the two.

The second reason for rejecting Guidice's claim is that the charge as given was susceptible of a misinterpretation by the jury in favor of Guidice. From the paragraph beginning "If you are satisfied," the jury might well have concluded that the government had the burden of proof beyond a reasonable doubt that the facts discussed in that paragraph did *not* exist. This is all the more likely because the paragraphs discussing the government's obligation followed the paragraph which described how Guidice could prevail on the defense. Cf. Notaro v. United States, 363 F.2d 169 (9th Cir. 1966); see also, Johnson v. United States, 115 U.S.App. D.C. 63, 317 F.2d 127, n. 2 at 129 (1963).

■ Guidice also argues that the charge was deficient in that it did not present to the jury the policy considerations which underlie the defense of entrapment. The claim is essentially that the jury must be instructed that the conduct of the government agents should be examined by the jury, independently of the defendant's predisposition, in every case where entrapment is an issue. On this record, it was certainly not plain error for the trial judge to give the charge requested by the defendant which made no reference to the policy considerations regarding the conduct of the agents. In any event, we find no support in this circuit for such a proposition. United States v. Jackson, 390 F.2d 317 (2d Cir. 1968).

This case does not resemble United States v. Pugliese, 346 F.2d 861 (2d Cir. 1965), heavily relied on by Guidice, in that it does not come to us with a record that strongly supports the defense of entrapment. See also Notaro v. United States, 363 F.2d 169 (9th Cir. 1966). In *Pugliese* the defendant's testimony as to the facts surrounding the alleged entrapment was "neither corrob-

2. This paragraph contains, verbatim, the complete request to charge on entrapment submitted by Guidice's trial counsel.

3. In his brief, Guidice's appointed appellate counsel informed us that the word

"no" appears in the original stenographic minutes, but was inadvertently omitted when the minutes were transcribed by the court reporter.

orated nor contradicted," 346 F.2d at 862, but in the present case Guidice's conclusory testimony is directly contradicted by agent Ward's testimony, which the jury was entitled to believe.

## II. Appellants Anthony Fontana and Joseph Marulli

■ Fontana complains that the trial judge's charge was in error in that he failed to tell the jurors that they could find the defendants guilty of substantive offenses on the basis of their membership in the conspiracy only if they found beyond a reasonable doubt that those offenses were committed in furtherance of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 646–647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). But Fontana's trial counsel neither raised objection to the charge nor offered a clarifying instruction. We do not see plain error in the charge as given. The judge stated:

"If you find that all three of the Defendants were guilty of a conspiracy beginning as early as June 13th, then, you may find all three guilty of each of the other counts, as well as the conspiracy. If you do not find that there was a conspiracy, then, you can find only Guidice guilty on the June 13th transaction involving eight bills which were passed when he was in the car.

"You have to make separate determinations with respect to Guidice, on the transactions on July 1st, and Marulli, who was said by Ward to have counted the bills, and Fontana, whose only connection on that day was that he was outside in the car when Guidice went outside and came back with the bills, and with respect to the July 3rd transaction, you can find only Guidice and Fontana guilty; that being the day when Fontana was asked to participate in the fixing of the price, but with respect to all these transactions, you cannot find anyone guilty of any count unless you are satisfied beyond a reasonable doubt that he was guilty on all the evidence.

"We have three different Defendants in this case, and there are aspects in which the evidence differs with respect to each of the three Defendants.

"You must weigh the evidence with respect to each Defendant and determine whether his guilt has been proved within a reasonable doubt, or not."

In previous portions of the charge the judge had properly described the elements of the offenses charged in the substantive counts of the indictment. He had also made it clear that the government had to establish all of those elements beyond a reasonable doubt, a point which was reemphasized in the latter part of the quoted portion of the charge. The jury was not misled by the charge, since they found Fontana guilty of conspiracy and of only one substantive count, that charging the sale of counterfeit money on July 3, 1968.

■ Fontana's second objection is that the trial judge in his charge, and the assistant United States attorney in his summation, committed reversible error by referring to Fontana's behavior during the July 3rd transaction as "setting" and "fixing" of the price to be charged Ward for the notes. Fontana now argues that his behavior could only be described as "computing" a price, and that the prosecutor's and judge's references unfairly advised the jury that both believed Fontana guilty of active participation in the sale. Again, there was no objection to either comment when it was made. In any event, the references of which Fontana now complains did not unfairly characterize his role in the July 3rd sale.

Marulli argues that there was insufficient evidence to convict him of one count of possession of counterfeit based on his participation in the July 1 transaction. He testified at the trial and denied that the transactions testified to by Ward ever took place. Ward's testimony was obviously accepted by the jury, and was sufficient to support the conviction.

See United States v. Johnson, 371 F.2d 800, 805–806 (3d Cir. 1967).

We have considered the other points made by the appellants and find they do not merit discussion.

The judgments of conviction are affirmed.