**UNITED STATES of America,**
**Appellee,**

v.

**Irving BRAVER and Morton Lehrer,**
**Defendants-Appellants.**

**No. 1031, Docket 71–1392.**

United States Court of Appeals,
Second Circuit.

Argued July 1, 1971.

Decided Oct. 28, 1971.

Jay H. Topkis, New York City (Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, Kenneth C. Bass, III, Washington, D. C., Gary N. Jacobs, New York City, on the brief), for defendants-appellants.

Rudolph W. Giuliani, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, Jon A. Sale, Asst. U. S. Atty., on the brief), for appellee.

Before FEINBERG and MANSFIELD, Circuit Judges, and BARTELS, District Judge.[*]

FEINBERG, Circuit Judge:

Irving Braver and Morton Lehrer appeal from a judgment of conviction, entered after a trial in the United States District Court for the Southern District of New York before Lloyd F. MacMahon, J., and a jury. Both were convicted on two counts,[1] bribing a government official in violation of 18 U.S.C. § 201(b), and conspiracy to bribe in violation of 18 U.S.C. § 371. Each was sentenced on the conspiracy count to six months imprisonment and a $10,000 fine and on the substantive count to a concurrent six month sentence and a $20,000 fine. Appellants are presently at liberty on their own recognizance. On appeal, they challenge the charge given by the trial judge on entrapment and his failure to grant a continuance on the last day of trial.

The facts of this case, as could have been found by the jury, arose from the activities of Harold Wenig, an undercover agent of the Internal Revenue Service (IRS). At the time in question, Wenig had posed as a corruptible IRS inspector.[2] In June 1967, Wenig told an IRS agent, Sidney Romanoff,[3] that the

---

[*] Of the Eastern District of New York, sitting by designation.

1. Originally there were three counts. The third, charging the offer of an unlawful gratuity in violation of 18 U.S.C. § 201 (f), was dismissed by the district court with the consent of the Government.

2. For other results of Wenig's role, see United States v. Lewis, 447 F.2d 134 (2d Cir., 1971); United States v. Greenberg, 444 F.2d 369 (2d Cir., 1971); United States v. Viviano, 437 F.2d 295 (2d Cir.), cert. denied, 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971); United States v. Weiser, 428 F.2d 932 (2d Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971).

3. Before the June 1967 meeting, Romanoff had paid Wenig $200 for information con-

IRS was investigating the defendants' accounting firm and inquired whether Romanoff knew Braver or Lehrer. Romanoff, who had "moonlighted" for the firm, said that he did. Wenig then informed him that information concerning the investigation of the firm would be available for a price. During the early part of July, Romanoff relayed the message to the defendants and, after some hesitation, Braver indicated that they would purchase the information for $500 although they were not sure it would have any value to them.

On July 13, Romanoff met Wenig in Manhattan where Romanoff copied information pertaining to the investigation of defendants' firm that Wenig read to him. Romanoff paid Wenig $500 in cash for this information and explained that he was advancing the money for the defendants. Wenig then offered to sell for $1,000 additional information about proposed grand jury questions. Immediately after this meeting, Romanoff delivered the information to Lehrer and asked if the defendants would be interested in the grand jury questions. Lehrer said that he would think about it. Approximately one week later Braver visited Romanoff at his home and reimbursed him for the $500 paid to Wenig.

On July 20, Wenig informed Romanoff that he would be interviewing clients of defendants' firm and Romanoff requested the list of the taxpayers. When questioned by Romanoff, Lehrer expressed no interest in the grand jury questions but told Romanoff that, as part of the $500 already paid, he and Braver were entitled to the list of the taxpayers. Romanoff again requested the list as a personal favor from Wenig and, on August 4, Wenig delivered it. A few days later Romanoff gave the list to Braver. There was no further exchange of money and the defendants never met Wenig.

I

■ Appellants' central argument concerns the district court's charge on entrapment. That charge, quoted in the margin,[4] bifurcated the defense of entrapment into two elements, inducement and propensity. The judge instructed the jury that the defendants had the burden of proving inducement by a fair preponderance of the evidence and that the Government had to prove propensity beyond a reasonable doubt. Appellants recognize that this analysis of the entrapment defense is based upon Judge Learned Hand's opinion in United States v. Sherman, 200 F.2d 880 (2d Cir. 1952).[5] However, arguing that "This

cerning an IRS investigation of Romanoff. In 1968, he resigned from the IRS and subsequently pleaded guilty to an indictment charging conspiracy to bribe. At the time of trial, Romanoff had not yet been sentenced.

4. The question of entrapment involves two issues. The first issue is whether the defendant was led or induced to commit the crime by anyone acting for the government. That is, did the government initiate the criminal transaction? On this issue the defendant has the burden of proof. He does not have to prove it beyond a reasonable doubt but he must prove it by a fair preponderance of the evidence. That is, he must satisfy you that it is more likely than not that the government initiated the criminal transaction involved in this case. If you do not find such inducement then there was no entrapment, but if you do find such inducement then you must consider the second issue.

The second issue is whether the defendant was ready and willing to commit the crime without persuasion. This is sometimes expressed as an issue of whether he had a propensity to commit the crime. On this issue the government has the burden of proof and it must prove it beyond a reasonable doubt. * * *

5. [I]n [entrapment] cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it.
200 F.2d at 882–883. Ultimately the Supreme Court held that the defendant had been entrapped as a matter of law. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Court has never approved instructions modeled on *Sherman*,"[6] appellants urge us to reconsider that approach in light of the First Circuit decision in Kadis v. United States, 373 F.2d 370 (1967). Essentially, appellants argue that dividing entrapment into two issues and placing the burden on the defendant to prove inducement is error because it conflicts with the constitutionally mandated presumption of innocence and because it is unduly prejudicial.[7]

Appellants point out that the *Sherman* decision reversed the trial court for errors in the instructions given there and did not specifically approve the charge used in this case. But it is late in the day to argue that this court has not since approved that charge. A few weeks before this case was argued, we said in United States v. Greenberg, 444 F.2d 369, 371 (2d Cir. 1971), that "This circuit adheres to the bifurcated analysis of entrapment defined in United States v. Sherman. * * *" Even more recently, in United States v. Nieves, 451 F.2d 836, 837 (2d Cir., 1971), we specifically relied on the *Sherman* inducement-propensity analysis.

Moreover, we believe that this circuit has approved a defendant's burden of proof as charged in this case. Judge Hand did not specifically define the quantum of proof in *Sherman* and only stated that on the issue of inducement "the accused had the burden." 200 F.2d at 882. Arguably, Judge Hand may have been referring only to the burden of coming forward with evidence, rather than a burden of persuasion. See C. McCormick, Law of Evidence §§ 306, 307 (1954). But such an argument does not amount to very much. In the passage quoted in note 5 *supra*, Judge Hand contrasted the defendant's "burden" with that of the Government. Almost immediately following that sentence, the opinion stated that on the inducement "issue [defendant] had the affirmative." Id. at 883. Then the opinion said that the "prosecution had the burden upon the issue of [propensity], it had to satisfy the jury." Id. From this it is apparent that a defendant's burden of proof must be at least the "preponderance" or "more-likely-than-not" standard. In United States v. Thomas, 351 F.2d 538 (2d Cir. 1965), this court indicated that the burden was by a "preponderance of the evidence," and the opinions in United States v. Guidice, 425 F.2d 886, 889–891 (2d Cir.), cert. denied *sub nom.*, Fontana v. United States, 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 77 (1970), and United States v. Bishop, 367 F.2d 806, 809 n. 3 (2d Cir. 1966), clearly assume that the defendant has to meet that standard of proof. See also United States v. Lewis, 447 F.2d 134 (2d Cir., 1971); United States v. Weiser, 428 F.2d 932, 934 (2d Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971). Nothing said in United States v. Cohen, 431 F.2d 830 (2d Cir. 1970), United States v. Henry, 417 F.2d 267 (2d Cir. 1969), cert. denied, 397 U.S. 953, 90 S.Ct. 980, 25 L.Ed.2d 136 (1970), or United States v. Pugliese, 346 F.2d 861 (2d Cir. 1965), indicates the contrary. At most those opinions indicate that a defendant's burden may be reconsidered in an appropriate case or that, to meet his burden, a defendant need prove no more than "the govern-

---

6. Appellants' Brief at 14.

7. At trial, defendants not only raised the entrapment defense but also testified that they had not paid any bribe. This raises the problem of inconsistent defenses. However, the district court allowed both, and the Government does not raise the issue in this court. In these circumstances we do not consider whether a defendant has the right

both to deny the transaction and "to urge that if the jury believed it did

occur the government's evidence as to how it occurred indicated entrapment." [Hansford v. United States, 112 U.S. App.D.C. 359, 303 F.2d 219, 221 (1962)]
United States v. Alford, 373 F.2d 508, 509 (2d Cir.), cert. denied, 387 U.S. 937, 87 S.Ct. 2062, 18 L.Ed.2d 1003 (1967); see also United States v. Bishop, 367 F.2d 806, 809 & n. 4 (2d Cir. 1966).

ment agent initiated the payment." United States v. Cohen, 431 F.2d 830, 832 n. 2 (2d Cir. 1970).

■ Appellants also argue that instructions based upon *Sherman* are constitutionally deficient and prejudicially confusing. As to the former, the claim is that placing upon the defendant the burden of proving inducement denies him due process. In re Winship, 397 U. S. 358, 364, 90 S.Ct. 1068, 1073, 25 L. Ed.2d 368 (1970), relied upon by appellants, held that:

> [T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

Without discussing the various rationales for the entrapment defense,[8] it is enough to say that the law of this circuit is that the defense "does not negative any of the essential elements of the crime." United States v. Greenberg, 444 F.2d 369, 372 (2d Cir. 1971). See also United States v. Riley, 363 F.2d 955 (2d Cir. 1966); Final Report of the National Commission on Reform of Federal Criminal Laws, Proposed New Federal Criminal Code § 702 (1971) [Proposed Federal Criminal Code].

As to the alleged confusion created by the *Sherman* instructions, appellants have a number of arguments. First, they claim that a lay jury cannot really distinguish in the same case between proof beyond a reasonable doubt and proof by a preponderance of the evidence. Second, they say that the central issue in entrapment cases is "whether the crime was the product of government activity—or the response of a ready and willing individual merely awaiting an opportunity to commit the crime" and that considering "the initiation of the criminal activity apart from

the defendants' willingness to engage" in it is "an unrealistic separation."[9] Finally, they claim that on the facts of this case, where the evidence of government initiation was both sufficient under United States v. Riley, 363 F.2d 955 (2d Cir. 1966), and uncontradicted, submitting the issue to the jury was error because this gave the jury the impression that the evidence before it was insufficient to prove inducement.

■■ Taking the last of these arguments first, we do not agree that because the evidence was so overwhelmingly against the Government on the issue of inducement, it was prejudicial error to submit the issue to the jury at all. The basic premise that the submission itself indicated to the jury that there was not enough evidence to prove inducement is logically unsound. One might argue with equal force that submission to the jury implies just the opposite. Moreover, no clear request was made to the judge to withdraw the issue from jury consideration, nor can we conceive that the jury on this record found that defendants had not established initiation. While the judge might properly have told the jury that government initiation of the crime had been proved, his failure to do so was not reversible error.

The claim that the true focus should be on a single issue is more substantial. This was the emphasis of the First Circuit in Kadis v. United States, 373 F.2d 370, at 373–374 (1967), where the court said:

> We will no longer bifurcate entrapment into sub-issues of inducement and predisposition. * * * [W]e will look, singly, at the ultimate question of entrapment. If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the

8. See, *e. g.*, Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); United States v. Dehar, 388 F.2d 430, 432 n. 4 (2d Cir. 1968);

United States v. Bishop, 367 F.2d 806, 808 n. 2 (2d Cir. 1966); 1 Working Papers of the National Commission on Reform of the Federal Criminal Laws 314–17 (1970) [1 Working Papers].

9. Appellants' Brief at 28.

burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness.

See also United States v. DeVore, 423 F.2d 1069 (4th Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1604, 229 L.Ed.2d 119 (1971). However, as this formulation indicates, sub-issues still remain. Evidence of "solicitation" is not enough; there must also be evidence "tending to show unreadiness." Presumably evidence of the latter without the former would also not suffice for a defendant. We realize that under the *Kadis* opinion the analysis of these sub-issues apparently remains only for the court, with the jury getting a general instruction to decide whether the Government had met its burden "to show that the defendant was not in fact corrupted by the government agent." [10] 373 F.2d at 374. But, as will be seen below, we think that an alternative formulation will provide enough of the unitary emphasis without departing too far from our precedents.

■ Finally, we do not agree that there is prejudicial error because the jury must use two different tests of burden of proof. Issues upon which the Government's burden of proof is by a preponderance of evidence only [11] or on which the defendant has the burden of proof [12] are not unknown in the criminal law. If defendants' proposition were sound, there could be no valid convictions in such instances. Indeed, the specific suggestion of § 702 of the Proposed Federal Criminal Code, see note 10 *supra,* is to place upon the defendant the burden of proof as to entrapment by a preponderance of the evidence, and the notes to the section indicate the possibility of jury trial of the issue. While nothing in this opinion should be viewed as approval of that proposal, it at least suggests that one scholarly group does not regard the use of two burdens of proof in the same criminal case as hopelessly confusing to a jury.

This does not mean that we are averse to changing the entrapment charge if there are good reasons for doing so. It does mean that we reject the proposition that the *Sherman* charge on entrapment has been fatally defective. However, it is evident from the record in prior cases in this court that some of the district court judges in this circuit do not always follow in every detail the charge based upon *Sherman.* See, *e. g.,* United States v. Berger, 433 F.2d 680 (2d Cir. 1970), cert. denied, 401 U.S. 962, 91 S. Ct. 970, 28 L.Ed.2d 246 (1971). In that case, 433 F.2d at 684, we noted approval of a charge that defendant had to:

[A]dduce some evidence that a government agent by initiating the illegal

10. It should be noted that this is still a subjective test of entrapment because it focuses not only on the governmental activities but also on the state of mind of the accused. *Cf.* United States v. Morrison, 348 F.2d 1003, 1004 (2d Cir.), cert. denied, 382 U.S. 905, 86 S.Ct. 242, 15 L.Ed.2d 158 (1965). An objective test, focusing solely on the governmental activities and based primarily on the concurring opinions of Justice Roberts in Sorrells v. United States, 287 U.S. 435, 453, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and of Justice Frankfurter in Sherman v. United States, 356 U.S. 369, 378, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), has been suggested in the Proposed Federal Criminal Code. Under that proposal, objective entrapment would be an affirmative defense with the defendant having the burden of proof by a preponderance of the evidence, but proof of prior criminal record to show propensity would apparently be eliminated. Proposed Federal Criminal Code § 702; 1 Working Papers 303–28. Whatever the merits of this approach, we have not been asked to reconsider our use of a subjective test.

11. See, *e. g.,* the rule in some other circuits on the issue of venue. Hill v. United States, 284 F.2d 754, 755 (9th Cir.), cert. denied, 365 U.S. 873, 81 S.Ct. 908, 5 L.Ed.2d 862 (1961) (Government must prove by preponderance of evidence); 1 Working Papers 12–13.

12. See, *e. g.,* 15 U.S.C. § 80a–48; N.Y. Penal Law, § 25.00(2) (McKinney's Consol.Laws 1967); See also Leland v. Oregon, 343 U.S. 790, 800, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); 1 Working Papers 17–19.

conduct himself induced the defendant to commit the offense. If you find that the defendant * * * has adduced such evidence then the government must prove beyond a reasonable doubt that the inducement was not the cause of the crime, that is, that the defendant * * * was ready and willing to commit the offense.

In the case before us the Government requested a similar charge, which would have required only that the defendants adduce some evidence on the inducement issue. And we are told that such a request is now frequently made by the Government in cases tried in the Southern District. In addition, we are aware that the definition of inducement now in effect in this circuit requires so little evidence to satisfy the defendant's burden of proof, as it has been phrased up to now, that production of "some evidence" of government initiation almost always satisfies it. Accordingly, we agree that a simplification of the charge on this issue is appropriate.

■ In light of all of this, we suggest that it would be preferable for the district courts of this circuit to use an entrapment charge that does not give to the jury two ultimate factual issues to decide on two different burdens of persuasion imposed upon two different parties. While we do not specifically define this preferable charge, we suggest that there be no reference to "burden" or "burden of proof" or "preponderance of evidence" in describing a defendant's obligation. In explaining the burden of proof on entrapment, it will be enough to tell the jury that if it finds some evi-

dence of government initiation of the illegal conduct, the Government has to prove beyond a reasonable doubt that the defendant was ready and willing to commit the crime. The language quoted from United States v. Berger, *supra,* would obviously be appropriate.

■ One further comment is necessary. In United States v. Riley, 363 F. 2d 955 (2d Cir. 1966), we held that the issue of entrapment need not be submitted to the jury when, even if there is evidence of inducement, there is uncontroverted evidence of the defendant's propensity to commit the crime. Nothing in this opinion is meant to change that rule.

## II

■ Appellants raise two other claims of error. First, they contend that a portion of the district court's charge explaining the rationale of the entrapment defense in essence told the jury that the government activities in this case were proper. Second, they claim that the district court abused its discretion by not granting a continuance at the end of the Government's case.

We reproduce in the margin the portion of the charge objected to by appellant.[13] We do not agree that it removed from the jury the factual question of entrapment. The district court merely explained the policy behind the entrapment defense and clarified the proper relationship of that defense with such law enforcement stratagems as undercover investigation and informers. Under present authority, use of the latter techniques is not per se improper.

---

13. The defendant asserts the defense of entrapment. The defense of entrapment is based upon the policy that law enforcement agencies cannot manufacture crime. They cannot tempt innocent people into committing a crime in order to prosecute them. But a line must be drawn between the entrapment of the unwary innocent and the trap for the unwary criminal. Law enforcement agencies often use undercover investigations and informants in attempting to enforce law. Such methods are not in any way forbidden by law.

Stealth and strategy are often necessary weapons in the detection and prosecution of crime. Whether or not you personally agree with the policy of using such methods is not an issue. Whether or not you agree with the policy of using co-conspirators like Romanoff or former criminals like Fanella, it is proper and the government must take such witnesses as there are to a transaction. It often has no choice and were it not for the use of such people, such methods, many crimes would go undetected and unprosecuted.

Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Moreover, the explanation was immediately followed by the district court's then correct exposition of the entrapment defense.[14]

 As explained above, after the entrapment issue had been raised by evidence of government initiation of the crime, the prosecution had the burden to prove beyond a reasonable doubt that the accused had the propensity to commit the crime charged. In this case, the Government amply met that burden on Thursday, January 28, 1971, through the testimony of two witnesses: Mantell, a client of defendants' firm, and Fanella, an IRS employee. The former testified that he had paid appellants extra fees to ensure special handling of his tax returns by the IRS. The latter testified that he had received bribes from appellants. Clearly, the issue of propensity was important, and appellants' counsel timely requested a continuance on the grounds of surprise in order to counter the Government's testimony. This was denied, and appellants argue to us that the denial was an abuse of discretion.

Obviously, the trial judge must have discretion to run his trials both to avoid undue delay and to protect the interests of the accused. Because appellants were on notice as to the substance of the propensity testimony and as to Judge MacMahon's desire to complete testimony on Thursday, January 28, we believe that the district court's denial was within its discretion. It is true that appellants never learned the actual names of Mantell and Fanella before they testified, but the substance of their testimony was known before trial. Appellants' counsel had listened to tapes of a conversation between Wenig and Romanoff in which Wenig discussed evidence in IRS files showing that some tax returns of defendants' clients bypassed normal audit procedures and that defendants had paid bribes to IRS employees. Indeed, Wenig testified to the same conversation

at trial. Moreover, on Wednesday, January 27, the government counsel explicitly made an offer of proof that outlined the testimony of Mantell and Fanella. On the same day, Judge MacMahon made it clear that the taking of testimony should be completed the next day. Despite all of this, and despite the fact that propensity testimony was critical to an entrapment defense, appellants' counsel did not request the names of the government witnesses before they testified. Even now, appellants point to no fact that they were prevented from presenting.

The convictions are affirmed.

14. Quoted at note 4 *supra*.